MARY MENNEILEY, Appellant, v. THE EMPLOYERS' LIABILITY ASSURANCE CORPORATION (Limited), Respondent.

1. ACCIDENT INSURANCE — BREATHING ILLUMINATING GAS. The exception, in an accident insurance policy, of death or disablement "arising from anything accidentally taken, administered or inhaled, contact of poisonous substances, inhaling gas, or any surgical operation or exhaustion consequent thereon," does not exempt the insurer from liability where the death of the insured is caused by his involuntarily and accidentally breathing illuminating gas which had accidentally escaped into the room where he was sleeping at the time of his death.

2. "INHALING GAS." The words "inhaling gas," in the above connection, refer to a voluntary, intelligent and conscious act on the part of the insured, and also have reference to medical or surgical treatment, or suicidal purpose.

3. "ANYTHING ACCIDENTALLY TAKEN, ADMINISTERED OR INHALED." The words "anything accidentally taken, administered or inhaled," in the above connection, apply only to cases where something has been voluntarily and intentionally, although mistakenly, taken, administered or inhaled, and do not exempt the insurer from liability for death caused by involuntarily and accidentally breathing escaped illuminating gas.

4. "EXTERNAL AND VISIBLE MARKS." The exception, in an accident insurance policy, of death or disablement "from accidents that shall bear no external and visible marks," means that the policy is to cover only such injury as can be shown by external and visible evidence to have been accidental, and does not exempt the insurer from liability in the case of a death caused by involuntarily and accidentally breathing illuminating gas which had accidentally escaped into the deceased's sleeping room, when, although there were no visible marks of the accident upon the body. it appears that upon entering the room it was perceived to be

full of gas, and that gas was then escaping therein; that an inspection of the body showed life to be extinct; and that, when artificial respiration was produced, illuminating gas emanated from the body.

Paul v. Travelers' Ins. Co. (112 N. Y. 472), followed.

Menneiley v. E. L. A. Co. (72 Hun, 477), reversed.

(Argued February 20, 1896; decided March 3, 1896.)

Appeal from judgment of the General Term of the Supreme Court in the fifth judicial department, entered October 27, 1893, which denied a motion for judgment on a verdict in favor of plaintiff, directed by the court at Circuit subject to the opinion of the General Term, and directed judgment in favor of defendant dismissing the complaint.

The facts in this case were agreed upon by the parties, and were as follows: "That on the 12th day of October, 1891, during the continuance of the said policy of insurance, Samuel D. W. Menneiley, the person mentioned in the complaint as the person insured in and by said policy of insurance, died; that at the time of his death he was stopping as a guest at the Millard Hotel, in Omaha, Nebraska; that he went to his room in said hotel on the night of the said 12th day of October, 1891, and at some time after he went to his room the illuminating gas therein accidentally escaped into his room; that early in the morning of the 13th day of October, 1891, the said Menneiley was found dead in his bed, his room being tightly closed on the inside and filled with such illuminating gas; that the death of said Menneiley was occasioned by accidental means and arose from and was caused by his involuntarily and accidentally breathing into his lungs the said illuminating gas, which had so accidentally escaped into such room, the escape of said gas being immediately discoverable upon entering said room, in consequence of which inspiration of said gas he died the same night of asphyxia; that the accident from which said Menneiley died caused no external and visible marks, and the body of said Menneiley bore no external and visible marks of the accident on account of which he died, unless the facts that illuminating gas emanated from his body when artificial respiration was produced to the percep-

tion of the person producing such artificial respiration; that the room on entering the same was easily perceived to be full of illuminating gas, and that the gas was then escaping therein and that inspection of the body showed life to be extinct, be held or found to constitute such external and visible marks within the meaning of the term 'external and visible marks' contained in the policy. The defendant does not admit that such facts constitute 'external and visible marks' within the meaning of the term 'external and visible marks' contained in the policy; the plaintiff claims that they do; that the plaintiff herein gave immediate notice of said accident, with full particulars thereof, in writing, to the United States managers of the defendant at Boston, and prior to the commencement of this action furnished them with full proof and evidence thereof; that on the 27th day of January, 1892, plaintiff duly demanded of the defendant payment of said policy, but that the defendant refused to pay the plaintiff any amount on said policy, claiming that said policy did not insure against such a risk as that which caused the death of the insured. This action was commenced February 11th, 1892."

*William Nathaniel Cogswell* for appellant. The clause exempting the company from liability in case the accident arose from inhaling gas does not apply to such a case as this. (*Paul* v. *T. Ins. Co.*, 112 N. Y. 472.) The clause exempting the company from liability against death or disablement arising from anything accidentally taken, administered or inhaled does not apply to such a case as this. (*P. L. Ins. Co.* v. *Martin*, 32 Md. 310; *Barry* v. *U. S. M. A. Ins. Co.*, 23 Fed. Rep. 712; *Bacon* v. *U. S. M. Accident Association*, 123 N. Y. 304; *Pickett* v. *P. M. L. Ins. Co.*, 144 Penn. St. 79.) The clause in the policy as to external and visible marks does not discharge the defendant from liability. (*U. S. M. A. Assn.* v. *Barry*, 131 U. S. 100.)

*W. A. Sutherland* for respondent. The defendant's policy has successfully attempted to stipulate against liability in

cases like the one at bar. (*Richardson* v. *Travelers' Ins. Co.*, 46 Fed. Rep. 843.)

MARTIN, J.   This action is upon a policy or contract of insurance issued by the defendant to Samuel D. W. Menneiley, by which, in case of his death from any accident, within the provisions of the policy, the defendant agreed within three months thereafter to pay to the plaintiff the sum of $5,000.

The conditions contained in the policy, so far as applicable to the questions involved in this case, are as follows : " This policy does not insure against death or disablement   *   *   * from accidents that shall bear no external and visible marks *   *   *  ، nor against death or disablement arising from anything accidentally taken, administered or inhaled, contact of poisonous substances, inhaling gas, or any surgical operation or exhaustion consequent thereon." The General Term held that the clause in the policy which provides that it does not insure against death or disablement arising from anything accidentally taken, administered or inhaled, described an act that was not voluntary and intelligent, but accidental, and that the admitted facts bring this case within that exception. That court also held that the facts did not establish a case within the exception as to inhaling gas, citing the decision of *Paul* v. *Traveler's Insurance Company* (112 N. Y. 472). Thus, the sole ground upon which judgment was directed for the defendant was that it was not liable because the cause of the death of the insured was within the exception in the policy as to death arising from anything accidentally taken, administered or inhaled. Moreover, the respondent admits that in this state, under the authority of the *Paul* case the words "inhaling gas," contained in the policy, when read in the light of the context, apply only to cases where gas is inhaled intentionally, voluntarily and consciously, and that under the decision in that case the judgment of the General Term cannot be upheld on the theory that that provision exempted the defendant from liability under its policy. In the *Paul* case, Judge GRAY in delivering the opinion of the court said : " But in expressing

its intention not to be liable for death 'from inhaling of gas,' the company can only be understood to mean a voluntary and intelligent act by the insured, and not an involuntary and unconscious act. Read in that sense and in the light of the context, these words must be interpreted as having reference to medical or surgical treatment, in which, *ex vi termini*, would be included the dentist's work, or to a suicidal purpose. Of course the deceased must have, in a certain sense, inhaled gas; but, in view of the finding that the death was caused by accidental means the proper meaning of words compels, as does the logic of the thing, the conclusion that there was not that voluntary or conscious act, necessarily involved in the process of inhaling." In that case it was distinctly held that the defendant was not exempt from liability under such a provision where the death of the insured was caused by the accidental inhaling of illuminating gas. The facts in that case were so nearly like those in the case at bar that no distinction between them exists. The *Paul* case was referred to in *Bacon* v. *U. S. Mutual Accident Assn.* (123 N. Y. 304, 308), and its doctrine expressly recognized as correct. It was also followed in *Pickett* v. *Pacific M. L. Co.* (144 Penn. St. 79, 91). It follows that the judgment appealed from cannot be sustained upon the ground that the clause in the policy excepting death from inhaling gas from its provisions exempts the defendant from liability in this case.

The respondent, however, urges that upon the admitted facts, the General Term properly held that the provision with reference to "anything accidentally taken, administered or inhaled," exempted the company from any liability whatever under its policy. We think otherwise. That provision in the policy clearly implies voluntary action on the part of the insured or some other person. The insured must take or inhale or another must administer. The manifest purpose of the provision is to exempt the insurer from liability where the insured has voluntarily and consciously, but accidentally, taken or inhaled, or something has been voluntarily administered which was injurious or destructive of life. We think that the particular acci-

dents intended to be excepted by that provision are the accidental taking or inhaling into the system of some injurious or destructive agency under the mistaken belief that it was beneficial, or, at least, harmless. That is made more apparent by that portion of the provision which relates to something "administered," as it cannot be reasonably construed as referring to a thing involuntarily and unconsciously administered. Indeed, it is quite difficult to understand how a thing could be involuntarily and unconsciously administered. Coupled together as these provisions are, the same rule of construction must be applied to that portion which relates to something accidentally inhaled as applies to the portion which relates to a substance accidentally taken or accidentally administered. All the cases thus provided for plainly involve voluntary and conscious action on the part of the insured or some other person. The leading and controlling idea in this provision is the performance of a voluntary act which accidentally causes the death or injury of the insured. That a proper construction of the policy requires us to hold that it applies only to cases where something has been voluntarily and intentionally, although mistakenly taken, administered or inhaled, there can, we think, be but little doubt. As thus construed, this provision manifestly did not exempt the defendant from liability in this case, as it was admitted that the death of the insured was occasioned by accidental means, and was caused by involuntarily and accidentally breathing illuminating gas which had escaped into the room where he was sleeping at the time of his death. The argument that the provision as to inhaling gas has been given the same effect as is now given to the other and more general one, and that such could not have been their purpose, has little force. The inhaling of gas having been specially provided for when taken for surgical and like purposes, it is only when it is inhaled for some other purpose, or under other circumstances, that the general provision applies. The special provision is applicable when gas is inhaled for surgical and like purposes; the general provision applies when it is inhaled for other purposes. Applying to

76

the construction of this policy the principles stated in the opinion in the *Paul* case, it is obvious that the construction we have placed upon the policy is the proper and correct one.

The only remaining question relates to the provision which declares that the policy " does not insure against death or disablement    *    *    *    from accidents that shall bear no external and visible marks." It is somewhat difficult to understand precisely what was intended by this clause of the policy. We are, however, of the opinion that the language employed, when fairly construed, indicates that its purpose was to provide that a case of death or injury should not be regarded as within the policy, unless there was some external or visible evidence which indicated that it was accidental. In other words, that only such injury as could be shown by external and visible evidence to have been accidental should be regarded as within the policy. In this case it is admitted that the decedent's death was occasioned by his involuntarily and accidentally breathing illuminating gas, which had accidentally escaped into his room; that there were no visible marks of the accident upon the body of the deceased, but when artificial respiration was produced illuminating gas emanated therefrom to the perception of the person producing such artificial respiration; that upon entering the room it was perceived to be full of gas, and that gas was then escaping therein, and that an inspection of the body showed life to be extinct. We think this admission furnishes sufficient evidence of an external and visible character that the death of the decedent was accidental to exclude it from this exception in the policy, and hence that it was one of the accidents against which the defendant intended to insure. The respondent discusses this question upon the theory that this clause in the policy should be construed as though it read " from accident where there shall be no external and visible marks upon the body of the deceased." A fair construction of the language does not, we think, justify the conclusion that such was its intent and purpose; but that the more reasonable construction is that which has already been suggested.

If we are correct in these conclusions it follows that the judgment of the General Term should be reversed, and the judgment upon the verdict directed for the plaintiff should be affirmed, with costs to the plaintiff in all the courts.

All concur, except Andrews, Ch. J., not voting, and Haight, J., not sitting.

Judgment accordingly.