McGLOTHER v. PROVIDENT MUT. ACC. CO. OF PHILADELPHIA.

(Circuit Court of Appeals, Eighth Circuit. October 3, 1898.)

No. 1,045.

INSURANCE—CONSTRUCTION OF ACCIDENT POLICY—"DEATH RESULTING FROM POISON."

    Where an accident insurance policy contains a provision that the insurance does not cover or extend to "death resulting from poison," the insurer cannot be held liable on the death of the insured resulting from poison accidentally taken under the mistaken belief that it was a harmless medicine.

    Thayer, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Missouri.

This was an action, upon a policy of insurance against accidents, to recover for a death caused by drinking poison under the mistaken belief that it was a harmless medicine. The policy contained these provisions:

    "This certificate insures said member, hereafter called the 'assured,' against bodily injuries effected during the continuance of this insurance by violent, external, and accidental means. * * * The insurance herein provided for does not cover or extend to disappearances, suicide, death, or injuries unaccompanied by any visible, external mark or sign, or resulting wholly or in part from hernia, fits of vertigo, somnambulism, or disease, or from poison, contact with poisonous substances, inhaling gas, surgical operations, or medical treatment."

The court below dismissed the action on the ground that the death was excepted from the risks covered by the policy, and the writ of error challenges that judgment.

L. C. Krauthoff (I. J. Ringolsky and Eugene Batavia, on brief), for plaintiff in error.

J. B. Scroggs, John E. McFadden, M. A. Fyke, and Ed. E. Yates, for defendant in error.

Before SANBORN and THAYER, Circuit Judges, and SHIRAS, District Judge.

SANBORN, Circuit Judge, after stating the facts in the foregoing language, delivered the opinion of the court.

Is a death from poison accidentally taken under the mistaken belief that it is a harmless medicine a death from poison? That is the real question in this case, and to ask it seems to answer it. If death from poison unconsciously taken under the belief that it is not poison is not a death from poison, what is it a death from? The whole is greater than any of its parts, and includes them all. Death from poison is greater than, and necessarily includes, death from poison taken in any particular way, because it includes death from poison taken in every way. It includes death from poison taken intentionally or unintentionally, consciously or unconsciously, voluntarily or involuntarily, with or without knowledge that the draught is dangerous, because every species of death from poison is included within the generic term. The question arises in this way. The Provident Mutual Accident Company of Philadelphia, the defendant in error, insured Jeannie M. C. McGlother, who was a practicing physician, against death by accidental means, by a policy which contained this provision:

"The insurance herein provided for does not cover or extend to disappearances, suicide, death, or injuries unaccompanied by any visible, external mark or sign, or resulting wholly or in part from hernia, fits of vertigo, somnambulism, or disease, or from poison, contact with poisonous substances, inhaling gas, surgical operations, or medical treatment."

Dr. McGlother died a few months after the policy was issued. His death resulted from poison, which he unintentionally, unconsciously, and involuntarily took without knowing that it was poison, and in the belief that it was a harmless medicine which he had prescribed as a drink for his patients. His widow, Serena B. McGlother, the plaintiff in error, and the beneficiary under the policy, brought this action upon it. The foregoing facts were conceded by the pleadings, and the court below rendered a judgment thereon in favor of the company.

It is admitted that the death of the insured was an accident, and that the plaintiff in error could have recovered, had it not been for the exception of death from poison which the policy contained. The contention of her counsel is that this exclusion of death from poison from the risks covered by the policy excepts death from poison voluntarily, consciously, and intentionally taken, only, and that, as the fatal draught which caused this death was taken involuntarily and unconsciously, it is not within the exception. They invoke the rule that when the terms of a policy are ambiguous, or of doubtful meaning, its provisions should be construed most strongly against the company. But it is only when some doubt of the meaning, or some am-

biguity in the expression of a policy, arises, that this rule applies. The terms of this policy raise no such doubt, and present no ambiguity to our minds. It does not seem more doubtful that death from poison involuntarily or unconsciously taken is a death from poison, within the meaning of this exception, than it does that death from poison taken from a cup or a glass is within its meaning. Counsel argue that since the exception of death from suicide includes only intentional self-destruction; of death from fighting, only death from voluntary fighting; and of death from a violation of law, only that which results from an intentional violation,—the same construction should be given to the exception now before us. But this policy contains in the same clause exceptions of death from hernia, fits of vertigo, somnambulism, disease, and poison. Is no death from hernia covered by this exception which is not voluntarily produced; none from fits of vertigo, unless the victim intentionally has the fits; none from somnambulism, unless the deceased purposely, voluntarily, and consciously walked in his sleep; and none from disease, unless voluntarily and consciously incurred? The rule, "Noscitur a sociis," which counsel invoke, comes very far from sustaining their contention here. Besides, this is a contract of insurance against accidents,—against risks and dangers that are unintentionally, involuntarily, and unexpectedly incurred. Association v. Smith, 29 C. C. A. 223, 85 Fed. 401, 405. It does not purport or attempt to insure against injuries, risks, or dangers voluntarily or intentionally encountered. The object of an exception in a contract is to exclude that which would otherwise be included within it; and since the injuries and deaths against which the association covenants to indemnify by this policy are those unexpectedly and unintentionally incurred, only, the natural and logical function of the exception here is to exclude such injuries and deaths, rather than those voluntarily and consciously encountered.

In support of their views, counsel cite Paul v. Insurance Co., 112 N. Y. 472, 478, 20 N. E. 347; Pickett v. Insurance Co., 144 Pa. St. 79, 22 Atl. 871; Fidelity & Casualty Co. v. Waterman, 161 Ill. 632, 44 N. E. 283; and Menneiley v. Assurance Corp., 148 N. Y. 596, 600, 43 N. E. 54,—which hold that the exception of death from "inhaling gas" covers death from a conscious and voluntary inhaling only, and does not extend to one caused by the involuntary and unconscious breathing in of gas which had escaped by accident while the victim was sleeping; and Healey v. Association, 133 Ill. 556, 25 N. E. 52; Insurance Co. v. Dunlap, 160 Ill. 646, 43 N. E. 765; and Association v. Tuggle, 39 Ill. App. 509, 514.—which hold, on the authority of Paul v. Insurance Co., that the exception of death "by taking poison" does not exclude death by poison, unintentionally and unconsciously taken. But the key to this line of decisions is found in the opinion in the Paul Case, which is cited and relied upon in all the others. It is the distinction which the courts that rendered those decisions have made between the expressions "death by inhaling gas" and "death from taking poison," and "death by gas" and "death from poison." In their opinion, the use of the words "inhaling" and "taking" implies a conscious act, while, if those words had not been used, every death by gas or from poison would have been clearly excepted from the policy.

This distinction is clearly stated in the Paul Case, 112 N. Y., at page 478, and page 349, 20 N. E., by Judge Gray, in these words:

"I agree with the counsel of the respondent in his suggestion that, if the exception is to cover all cases where death is caused by the presence of gas, there would be no reason for using the word 'inhale.' If the policy had said that it was not to extend to any death caused wholly or in part by gas, it would have expressed precisely what the appellant now says is meant by the present phrase, and there could have been no room for doubt or mistake."

In the last case upon this subject which the counsel cited, Fidelity & Casualty Co. v. Waterman, 161 Ill., at page 635, and page 284, 44 N. E.,—the supreme court of Illinois thus states the point of these decisions:

"That point, as we understand it, is that the word 'inhaling,' or 'inhalation,' or 'inhaled,' as used in the exception contained in these policies of life or accident insurance, implies a voluntary or intelligent act, as distinguished from an involuntary and unconscious act."

A like effect is given to the word "taking," in the phrase "from taking poison," in Insurance Co. v. Dunlap, 160 Ill. 646, 43 N. E. 765. In Menneiley v. Assurance Corp., 148 N. Y. 600, 43 N. E. 56, it is expressly declared that, while death from the unconscious breathing of gas which has accidentally escaped while one was sleeping is not covered by an exception of death "arising from anything accidentally taken, administered, or inhaled," such a death as that in the case at bar, from "the accidental taking or inhaling into the system of some injurious or destructive agency, under the mistaken belief that it is beneficial, or at least harmless," is the very accident intended to be excluded by the exception. Thus, it may be seen, by a careful examination of the terms of the policies and the crucial point of the decisions in these cases, that they do not necessarily rule the case in hand, but rest upon an implied meaning drawn from words not found in the policy in this suit. We must not be understood, however, to adopt or approve those decisions. The path they follow is so narrow, tortuous, and indistinct that we should hesitate long to follow it. Starting in the Paul Case with the thought that the word "inhaling" implies a conscious act, and invoking the much-abused rule that every policy of insurance of doubtful meaning should be construed most strongly against the company, it reaches the interesting conclusion in the Fidelity & Casualty Company's Case that a death from accidentally inhaling gas while sleeping is not a death "resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled," under an exception in the policy in those words. If gas is unintentionally and unconsciously taken or inhaled, why is it not "accidentally" taken or inhaled? If it is not, then why is it not "otherwise" taken or inhaled? And how can gas get into the system in any other way than by being "accidentally or otherwise taken, administered, absorbed, or inhaled?" In the Fidelity Company's Case the court interprets the exception of death "resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled," to mean death "resulting from poison, or anything accidentally or otherwise, consciously, and by an act of volition, drawn into the system

by inspiration," and then holds that the death there in question did not result from gas inhaled "consciously and by an act of volition," and therefore was not within the exception. But the parties who made the contract did not restrict their exception to death from anything taken or inhaled "consciously and by an act of volition," but expressly extended it over death from "anything accidentally or otherwise taken or inhaled." The construction given by the court to this clause of the policy appears to be cunning and astute to evade, rather than quick to perceive and diligent to apply, the meaning of the words it contains in their plain, ordinary, and popular sense.

We have pointed out the distinction between these cases and that at bar, but we rest our decision on broader grounds. The parties to this contract had the undoubted right to make their own agreement; to contract that the indemnity provided by the policy should protect against some or all of the ills that flesh is heir to. They had the right to make a contract that the company would protect the insured or his beneficiary against one or all of the accidents that might befall him. They made an agreement that the association would indemnify against all accidents except those expressly excluded by the terms of the policy. There was nothing illegal, immoral, or against public policy in the contract itself, or in the express agreement that certain accidents specified therein should be excluded from the promised indemnity; and there is no just reason why parties or courts should be ingenious or eager to add to, subtract from, or to search out curious and hidden meanings in the plain terms of, their compact. Contracts of insurance are not made by or for casuists or sophists, and the obvious meaning of their plain terms to the business and professional men who make and use them must not be discarded for some curious and hidden interpretation that is to be reached only by a long train of acute and ingenious reasoning. "Contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used; and, if they are clear and unambiguous, their terms are to be taken in their plain, ordinary, and popular sense." Imperial Fire Ins. Co. v. Coos Co., 151 U. S. 452, 463, 14 Sup. Ct. 379; Fred J. Kiesel & Co. v. Sun Ins. Office of London, 88 Fed. 243. 246. In the language of the learned, and in the common parlance of the street, a death from poison unconsciously taken in the belief that it was a harmless drink is a death from poison. A statement, made in the ordinary affairs of life, that such a death was not from poison, would be universally recognized as false. In its plain, ordinary, and popular sense, "death from poison" describes and includes a death from poison unconsciously and unintentionally taken under the mistaken belief that it is a harmless medicine; and it was undoubtedly in this sense that the parties to this contract used, and intended to use, it. To our minds the phrase is unambiguous and raises no doubt or question of its meaning; and our conclusion is that the death of the insured fell within the exception expressed in these words in the policy, and that the association is not liable for it, under its contract. Cole v. Insurance Co., 61 Law T. (N. S.) 227; Early v. Insurance Co. (Mich.) 71 N. W. 500; Pollock v. Association, 102 Pa. St. 230; Batchelor v. Association, 34 Wkly. Law Bul. 239,

89 F.—44

44 N. E. 1130; Nibl. Ben. Soc. & Acc. Ins. § 393; Cooke, Life Ins. § 56. The judgment must be affirmed, and it is so ordered.

THAYER, Circuit Judge (dissenting). I am compelled to dissent from the statement contained in the opinion of the majority, that the real question which the case at bar involves is whether "a death from poison. accidentally taken under the mistaken belief that it is a harmless medicine [is] a death from poison." In my judgment, this is an incorrect statement of the questions at issue. The policy sued upon contains the statement that:

"This certificate insures said member, hereinafter called the 'assured,' against bodily injuries effected during the continuance of this insurance by violent, external, and accidental means."

This was a general promise on the part of the insurer to indemnify the insured for all bodily injuries occasioned by accident. In another part of the policy or certificate is found the statement quoted in the opinion of the majority, namely:

"The insurance herein provided for does not cover or extend to disappearances, suicide, death, or injuries unaccompanied by any visible, external mark or sign, or resulting wholly or in part from hernia, fits of vertigo, somnambulism, or disease, or from poison, contact with poisonous substances, inhaling gas, surgical operations, or medical treatment."

As I view the case, therefore, the point to be considered is whether, in view of the character of the contract, and the broad obligation first assumed by the insurer to afford indemnity for all accidental injuries, the clause last above quoted should be construed. as exempting the insurer from liability for an injury occasioned by poison which was taken unintentionally, and purely through accident, or whether less scope should be given to the exception, so that it will include only those cases where an unexpected injury is sustained as the result of poison which was consciously and voluntarily taken by the insured. If the exception is limited in its scope as last indicated, it will not be without effect and meaningless, but will embrace cases where poisonous drugs or medicines are consciously taken, otherwise than with suicidal intent, and result in injury or death which was not anticipated. Another subsidiary question also deserves attention, namely, whether this court should place a construction upon the language of the exception contained in the policy which is at variance with the construction placed upon such language in other jurisdictions by courts of the highest authority and ability. In Paul v. Insurance Co., 112 N. Y. 472, 20 N. E. 347, an accident policy, which promised indemnity for bodily injuries sustained "through external, violent, and accidental means," in one of its later clauses provided that the insurance should not extend "to any bodily injury of which there shall be no external and visible sign upon the body, * * * nor to any death * * * caused * * * by the taking of poison, contact with poisonous substances, or inhaling of gas." The insured had died by inhaling poisonous gas which accidentally escaped and filled his room while he was asleep. The court held, after mature consideration, that, in view of the nature of the contract, the exception against liability for injuries occasioned by inhaling gas must be understood to mean "a

voluntary and intelligent act by the insured," and that inasmuch as the insured did not inhale gas voluntarily and intentionally, but accidentally, the case was not within the exception, and that the insurer was liable. This decision has been firmly adhered to by the court which delivered it, in Bacon v. Association, 123 N. Y. 304, 25 N. E. 399, and in Menneiley v. Assurance Corp., 148 N. Y. 596, 43 N. E. 54; and in the later cases it has been taken for granted that it decides that the insured must "intentionally, voluntarily, and consciously" inhale gas, take poison, or come in contact with poisonous substances, to bring the case within those exceptions. See Menneiley v. Assurance Corp., 148 N. Y. 596, 599, 43 N. E. 54. The decision in Paul v. Insurance Co., supra, has been approved and followed in the state of Pennsylvania, under whose laws the defendant company was incorporated (Pickett v. Insurance Co., 144 Pa. St. 79, 93, 22 Atl. 871), and by the courts of Illinois in several cases (Insurance Co. v. Dunlap, 160 Ill. 642, 645, 43 N. E. 765; Fidelity & Casualty Co. v. Waterman, 161 Ill. 632, 44 N. E. 283; Association v. Froiland, 161 Ill. 30, 36, 43 N. E. 766; Healey v. Association, 133 Ill. 556, 25 N. E. 52; Association v. Tuggle, 39 Ill. App. 509–514). Moreover, the same rule of construction which underlies these decisions was long ago adopted by the supreme court of the United States in construing life insurance policies which contain an exception from liability in case the insured shall "die by his own hand." It was held that the exception did not include all cases where the insured dies by his own hand, but only those where he acts voluntarily and consciously to avoid the ills of life, having sufficient intelligence to understand the moral character and the effect of the act of self-destruction. Insurance Co. v. Terry, 15 Wall. 580; Insurance Co. v. Akens, 150 U. S. 468–473, 14 Sup. Ct. 155. An attempt is made to draw a distinction as between the two modes of expression, "death by taking poison," and "death from poison"; but I am unable to attach any weight to the distinction, nor do I think that the cases above cited rest upon any such foundation. When we say that a person died "from poison," we mean that he died by taking into his system a poisonous drug, compound, or substance. The two forms of expression in ordinary parlance mean the same thing, and should be taken as conveying the same idea. I conclude, therefore, that the great weight of authority is with the plaintiff in error; that the construction of the policy for which she contends is not unreasonable, in view of the well-established rule requiring us to construe it most strongly against the insurer; and that the judgment below ought to be reversed.