## DENT v. RAILWAY MAIL ASS'N.

(Circuit Court, D. Minnesota, Third Division.   December 9, 1910.)

1. INSURANCE (§ 787*)—CAUSE OF DEATH—POISON — "TAKEN" OR ADMINISTERED.

   Where a benefit certificate provided that no benefit should be paid where death or disability resulted from poison or other injurious matter "taken or administered accidentally or otherwise," the word "taken" should be construed, in connection with the word "administered," to mean an internal taking; and hence such clause did not preclude a recovery for death resulting from insured coming in contact with poison ivy while cutting a branch in the woods adjoining a city.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 787.*

   For other definitions, see Words and Phrases, vol. 8, pp. 6846, 6850, 7812.

   Risks and causes of loss under accident insurance policies, see notes to National Accident Society of New York v. Dolph, 38 C. C. A. 3; New Amsterdam Casualty Co. v. Shields, 85 C. C. A. 126.]

2. INSURANCE (§ 787*)—"ACCIDENTAL"—WHAT CONSTITUTES.

   Since the word "accidental" is descriptive of means which produce effects which are not their natural and probable consequences, where insured died as the result of his hand coming in contact with poison ivy while he was cutting a branch in the woods near a city, his death was "accidental" within the policy.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 787.*

   For other definitions, see Words and Phrases, vol. 1, pp. 62–72; vol. 8, p. 7560.]

3. INSURANCE (§ 787*)—ACCIDENT INSURANCE—VISIBLE, EXTERNAL MARKS OF INJURY OR VIOLENCE.

   Where an accident policy provided that no benefit or sum whatever should be payable thereunder unless the accident alone resulted in producing visible, external marks of injury or violence suffered by the body of the member, but did not provide when the visible marks must be produced, it was a sufficient compliance with the policy, in a case where insured died as the result of his hand coming in contact with poison ivy where claim was made on the policy for the death that the visible marks appeared before insured died.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 787.*]

4. INSURANCE (§ 719*)—ACCIDENT POLICY—CHANGE OF AMOUNT.

   Where a change was made in the constitution of defendant benefit society, raising the amount of death benefits from $3,000 to $4,000 subsequent to the time insured came in contact with poison ivy, but before he died as a result thereof, his beneficiary, in an action on the policy for death benefit, was entitled to recover the increased amount.

   [Ed. Note.—For other cases, see Insurance, Dec. Dig. § 719.*]

At Law.   Action by Ella S. Dent against the Railway Mail Association.   Judgment for plaintiff on directed verdict.

This was an action brought by the widow of James Dent, who came to his death from the effects of poison ivy.   From the undisputed facts it appeared that on May 2, 1909, the deceased with the plaintiff went to the outskirts of the city of St. Paul, where he, leaving his wife, walked into some adjacent woods, and there cut a branch of oak and a little stick, which he brought back to her.   Within a day or two he called his wife's attention to a discoloration between the fingers of his hand, which subsequently turned into an eruption that spread to his arms, neck, and chest.   This eruption

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

progressed, and in the latter part of the month he called on a physician who prescribed for him. A few days thereafter he saw the physician again who told him that he would have to quit work. About two days later the same physician was summoned and found deceased in a very bad condition, and a nurse was called in. This condition went from bad to worse, and grew desperate, so that on June 21st he was removed to a hospital, where he died two days later. The undisputed evidence showed that his death was caused by poison ivy. He held a policy in the defendant company, but it refused to pay on the ground that the death was not accidental.

Owen O'Neil, for plaintiff.
John P. Kennedy, for defendant.

WILLARD, District Judge (orally, after stating the facts as above). This case presents some very interesting questions. During the recess I have examined with some care the cases cited by defendant. The questions presented in the case may be reduced to three. The first one relates to the clause in the policy or in the constitution with regard to poison. The second one is whether this was an accident or not. The third relates to that part of the constitution or the policy which provides for external visible marks.

Taking up the clause relating to poison first, it is seen that it reads as follows:

"Nor shall any benefit be paid where death or disability results from voluntarily inflicted injuries, by the member sane or insane; nor from poison or other injurious matter taken or administered accidentally or otherwise."

If that portion of the certificate or constitution had stopped with the words "from poison," another question altogether would have been presented. But it does not say "no benefit shall be paid if the loss occurs from poison." That general clause is qualified by the words "taken or administered accidentally or otherwise." The word "administered," of course, has no application to this case, and the question is: In what sense must the word "taken" be considered? I am very clearly of the opinion, when we consider that the word "taken" is used in connection with the word "administered," and that they are both used in connection with the words "accidental or otherwise," that it excludes a case similar to the one that we have here. It must have been, in my judgment, an internal taking, and that taking must be the effect of an act voluntary or involuntary of the person injured.

I think it would shock the ideas of justice of us all to hold that this policy did not include a death by the bite of a poisonous snake. If anything could be considered an accident, I think that would be so considered, and there is no reason why this company should not and should not be willing to pay for such a loss. As said by Mr. O'Neil, this clause was undoubtedly inserted to exclude a case of suicide. It was intended to cover such a case, and exempt the company where death resulted from the taking of the insured's own life by administration of poison by himself; or perhaps to cover such a case as the one in Wisconsin, where a dentist administered some poisonous substance to his patient.

An examination of the authorities cited by the defendant makes it plain that the policies differ in important particulars from the policy here.

The first case cited is McGlother v. Provident Mutual Accident Company of Philadelphia, 89 Fed. 685, 32 C. C. A. 318. The policy there contained the words "or from poison, contact with poisonous substances." If that clause had stopped with the word "poison," the case would have been stronger than this; but it does not stop there, but says also "contact with poisonous substances," which makes it much stronger than this case. If those words had been contained in this policy, it would have been very difficult, in my judgment, for the plaintiff to recover.

It was entirely within the power of the company to have made this provision plain. If it had intended to exclude any liability on account of death caused by any poison, in any way, it could have used the language that was before the court in the McGlother Case. But it did not do that.

The same thing may be said of the case cited by defendant from the Supreme Court of Florida, the case of Preferred Accident Insurance Company v. Robinson, 45 Fla. 525, reported in 33 South. 1005, 61 L. R. A. 145.

The words "absorbed" was not in that case used in connection with the word "poison." That policy provided as follows:

"Nor injury, fatal or nonfatal, resulting from any poison or infection, nor from anything whatever, accidentally or otherwise taken, administered, absorbed or inhaled."

This was a positive provision that the policy did not cover a case which resulted from poison. It went further than this certificate goes in that respect, and also went further than this certificate goes in another respect; for it provided that it should not apply to a case of injury resulting from anything whatever, accidentally or otherwise taken, administered, or absorbed. The word "absorbed" is not found in this policy.

The case of Bacon v. U. S. Mutual Accident Association, 123 N. Y. 304, 25 N. E. 399, 9 L. R. A. 617, 20 Am. St. Rep. 748, had to do with a policy which contained the simple phrase "from poison," without any qualifying words. It being within the power of the company by the use of those words to exempt it from liability from this particular loss, if there is any doubt as to what the policy means, it must be construed against the company. And although Judge Sanborn says in the opinion first cited that this proposition has been very much abused, yet it must be applied, I think, in a case of this kind where there is a real doubt. In that case there was no doubt, because, the person having been killed from poison, whether he took it accidentally or not, he must have died from poison.

But the question here is whether the insured died from poison taken or administered, and I think the construction of these words "taken or administered" excludes the manner in which Dent came to his death.

The next question is whether the circumstances proven in this case show an accident. Upon that point the controlling authority for this court is the case of the Western Commercial Travelers' Association v. Smith, 29 C. C. A. 223, 85 Fed. 401, 40 L. R. A. 653.

This is the case referred to by Mr. O'Neil, where it is said:

"In the latter part of August, 1895, while this certificate was in force, Freeman O. Smith, who was a strong and healthy man, commenced wearing a pair of new shoes. About September 6, 1895, the friction of one of his shoes against one of his feet, unexpectedly and without design on his part, produced an abrasion of the skin of one of his toes. He gave the abrasion reasonable attention, but it nevertheless caused blood poisoning about September 26, 1895, which resulted in his death on October 3, 1895."

Concerning the word "accidental," the court said, on page 227 of 29 C. C. A., page 405 of 85 Fed. (40 L. R. A. 653):

"The significance of this word 'accidental' is best perceived by a consideration of causes to their effects. The word is descriptive of means which produce effects which are not their natural and probable consequences. The natural consequence of means used is the consequence which ordinarily follows from their use—the result which may be reasonably anticipated from their use, and which ought to be expected."

Within that definition I think it can be fairly said that when a person goes into the woods in this vicinity and cuts a bush, or a stick, or a shrub, he does not reasonably or ordinarily expect that he is going to be poisoned by ivy. If he knew that poison ivy existed there, very likely there would be another question. But, without any knowledge on his part, the ordinary, reasonable, and natural result of going into the woods and cutting a bush or shrub is not that the person shall be poisoned by ivy.

I shall therefore hold, under that definition, that the taking or catching of this poison by cutting the shrub or bush was an accident, and that it comes within the terms of the policy.

The remaining question is whether the company can be relieved by reason of this provision in the policy which says:

"No benefit or sum whatever shall be payable in any case whatever, unless the accident alone results in producing visible external marks of injury or violence suffered by the body of the member."

It says "visible external marks of injury." It does not say when the visible marks must be produced; it does not say that the accident must at the very moment of its happening have produced a visible or external sign. Passing the point made by Mr. O'Neil to the effect that this clause has no application to a case of death, it seems to me that it must be held that it is complied with if such visible marks do appear afterwards. Of course it must be established to the satisfaction of the court or jury that those visible marks were the result of the accident. If they were not, but were the result of something else, there could be no recovery. But, if it is established to the satisfaction of the court or jury that these visible external marks are the result of the injury, the fact that they did not appear instantly is not a defense to the suit. Take a case of drowning. I suppose there are no external marks at the time, and yet I do not believe that Mr. Kennedy would claim that a recovery could not be had under this policy in such a case. Or take the case of a person inhaling gas, where he goes to sleep in a closed room, and it is found that the gas was turned on. I suppose that there is in such a case no visible sign or mark, and yet I think such a case would be covered by this policy.

When the case of Bacon v. U. S. Mutual Accident Association, in 123 N. Y., 25 N. E., 9 L. R. A., 20 Am. St. Rep., was read, I thought that it possibly might have a more important bearing than these other cases; but, upon examination, it seems that the whole question turned upon whether the man died from disease or not. The facts of the case, as stated in the dissenting opinion, are these:

"The insured went to Council Bluffs on the 1st of February, 1884, and, as has been stated, died there in less than two months after. He was first employed as a bookkeeper in a meat market, and later as a check clerk in the transfer department of the Union Pacific Railroad. It was shown that car loads of hides frequently pass that station, and that a large number of cattle are brought there and slaughtered in the vicinity; but there was no direct or positive proof that the deceased ever came in contact with the hides, or even the flesh of these animals."

It is said further:

"There is no dispute as to the fact that death resulted from the effects of a malignant sore upon the lip of the insured, which soon after its appearance involved the neighboring parts, producing such septicemia and utter exhaustion."

There was a good deal of discussion and dispute as to whether this was a death from disease or accident. The court held that it was a death from disease; that it was caused from anthrax, which is a disease that may be taken through the mouth, or it may be absorbed through the pores. While giving that case all the weight to which it is entitled, I do not think that it comes up to this case; and, as I understand the decision read by Mr. O'Neil from the House of Lords, it is inconsistent with this New York case.

The cases under employers' liability acts of this kind decided in England evidently hold to a broad doctrine, and would resolve this case in favor of the plaintiff.

The result of my consideration of the questions involved is that the motion will have to be denied.

Counsel for defendant now moves the court to direct the jury to find that the amount of recovery cannot exceed the sum of $3,000, for the reason that the amendment to the constitution changing the amount from $3,000 to $4,000 was made subsequent to the time when the injury was received.

The Court: If this were an action for compensation for this injury which had not resulted in the death of the insured, I think it is very probable that any increase in the amount of compensation after the accident took place would not relate to this accident. But that is not this case; this is a case of death. The death occurred after this amendment was made, and there is no saving clause in it to the effect that it shall not apply to a case where death resulted from an accident which had occurred previous to the amendment. I think I shall have to hold that the full amount of $4,000 can be recovered in this case, and I will deny the motion.

Is there anything on which you desire to go to the jury, Mr. Kennedy?

Mr. Kennedy: No sir; I think not.

The Court: I do not think there is anything for the jury.

Counsel for plaintiff then moved for a directed verdict for the amount claimed in the complaint, with interest from the date of the commencement of the action.

The Court: Gentlemen of the jury, as you have gathered from what has been said, I hold as a matter of law that the plaintiff is entitled to recover in this action, and that she is entitled to recover the sum of $4,000. with interest from the date of the commencement of the suit. I therefore direct you to return a verdict for the plaintiff in the sum of $4,000, with interest at 6 per cent. from the 1st day of December, 1909.