### HAWKEYE COMMERCIAL MEN'S ASS'N v. CHRISTY.

(Circuit Court of Appeals, Eighth Circuit. November 12, 1923.)

No. 6101.

1. **Courts ⚖372(6)—State decisions not controlling in federal courts on questions of commercial or general law.**

   Decisions of state courts are not controlling authority in the federal courts on the question of the construction of an insurance policy, which is one of general law, on which the federal courts are required to exercise their independent judgment.

2. **Courts ⚖90(6)—Appellate court not bound by prior decision.**

   An appellate court is not bound or estopped by its erroneous decision of a question of law, when that question is again presented by those who were not parties to the suit in which the erroneous judgment was rendered.

3. **Insurance ⚖458—Insurer held exempted from liability for death from gas involuntarily inhaled.**

   A provision of an accident certificate, "Nor shall the association be liable for indemnity for any death resulting wholly or in part from * * * poisonous substances, gases, or anything accidentally or otherwise taken or inhaled," is not susceptible of a construction which will make liability for a death from the inhaling of gas dependent on whether it was inhaled voluntarily or involuntarily, but in plain words exempts the insurer from liability, whether the gas was inhaled voluntarily or involuntarily, consciously or unconsciously.

4. **Insurance ⚖146(1)—Contracts must be enforced as made by parties.**

   The parties to insurance contracts have the right and power to contract for what accidents and risks the companies shall, and for what

---

⚖For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

accidents and risks they shall not, be liable, and the courts may not make new or different contracts for them.

**5. Contracts &#8658;152—Provisions to be given natural and obvious meaning.**

The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense, which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover.

**6. Contracts &#8658;147(2)—Intention of parties must be given effect as expressed.**

In suits on written contracts, courts may lawfully give effect to the intentions of the parties expressed in the writings only.

Appeal from the District Court of the United States for the Southern District of Iowa; Martin J. Wade, Judge.

Suit in equity by Nina Etta Christy against the Hawkeye Commercial Men's Association. Decree for plaintiff, and defendant appeals. Reversed and remanded for further proceedings.

F. E. Northup, of Marshalltown, Iowa (Robert E. Johnson, of Marshalltown, Iowa, and John N. Hughes, of Des Moines, Iowa, on the brief), for appellant.

Charles C. Spencer, of Chicago, Ill. (Charles S. Bradshaw and Casper Schenk, both of Des Moines, Iowa, on the brief), for appellee.

Before SANBORN, LEWIS, and KENYON, Circuit Judges.

SANBORN, Circuit Judge. The defendant below, and so styled hereafter, a mutual insurance association against accidents to its members organized under the laws of Iowa, appeals from a decree of the court below to the effect that it levy upon its members and pay to the plaintiff, Nina Etta Christy, the widow of Albert L. Christy and the beneficiary in his certificate of membership in the defendant, issued on May 18, 1908, $6,725, on account of his death on October 4, 1915, from gases or something taken or inhaled by him.

On October 4, 1915, Mr. and Mrs. Christy were engaged in fumigating a room to destroy insects. They placed four sulphur candles on a tin dustpan in the room and poured some alcohol over them. Mrs. Christy lighted two of them and came out of the room. Mr. Christy was lighting the other two at the same time that his wife was lighting hers, but he did not finish lighting his until a little after she came out of the room. Then he came out coughing and sneezing very violently, soon fell down, and subsequently during that day he died. The court below found that the proximate cause of his death was the taking or inhaling into his system of the fumes or gases produced in the room he was fumigating, and the record leaves no doubt of the correctness of this conclusion.

Counsel for the defendant insisted, and still insist, that death from such a cause, and consequently this death, is, by the terms of the certificate of membership, expressly excepted from the deaths it agreed by that certificate to indemnify the beneficiary against, and in support of that contention cites and relies upon this provision of the certificate:

" * * * Nor shall the association be liable for indemnity for any death resulting wholly or in part from poison, poison ivy, poisonous substances, gases or anything accidentally, or otherwise, taken, administered, absorbed, injected, inserted or inhaled."

&#8658;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Counsel for the plaintiff contended that a death "resulting wholly or in part from * * * gases or anything accidentally, or otherwise, taken * * * or inhaled" did not fall within this exception, unless the gas or anything taken or inhaled was voluntarily and consciously taken or inhaled, or "consciously and by an act of volition drawn into the system by inspiration." Fidelity & Casualty Co. v. Waterman, 161 Ill. 632, 636, 44 N. E. 283, 32 L. R. A. 654. And the decisive question in this case is: Was the death of Mr. Christy, which resulted "from poisonous substances, gases or anything accidentally, or otherwise, taken * * * or inhaled" by him, within or without the exception quoted?

The court below declared that, if this were an original question, it would be inclined to hold that the death in this case was within the exception, but that in view of the following authorities it would enter a decree for the plaintiff. In the year 1889 the Court of Appeals of New York, in an action on an accident policy of insurance which provided that the insurance should not extend "to any death or disability which may have been caused * * * by the taking of poisonous substances, or inhaling of gas," and the assured was found dead in his bedroom in a hotel, held that such a death was not within the exception, because it was limited to death from the voluntary and conscious inhaling of gas, and the inhaling in that case was unconscious and involuntary. Paul v. Travelers' Ins. Co., 112 N. Y. 472, 478, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758. This construction of such exceptions as that in the Paul Case has been followed in cases wherein the deceased, while sleeping, unconsciously inhaled gas which caused his death in Fidelity & Casualty Co. v. Waterman, 161 Ill. 632, 635, 44 N. E. 283, 32 L. R. A. 654; Travelers' Ins. Co. v. Ayers, 217 Ill. 390, 75 N. E. 506, 2 L. R. A. (N. S.) 168; Menneily v. Employers' Liability Co., 148 N. Y. 596, 600, 43 N. E. 54, 31 L. R. A. 686, 51 Am. St. Rep. 716; Fidelity & Casualty Co. v. Lowenstein, 97 Fed. 17, 38 C. C. A. 29, 46 L. R. A. 450. A similar construction was given to a like exception, where the deceased died from unconsciously inhaling poisonous gas in a well into which he had descended to fix a pump, Pickett v. Insurance Co., 144 Pa. 79, 89, 91, 22 Atl. 871, 13 L. R. A. 661, 27 Am. St. Rep. 618; to a like exception of death from taking poison where the deceased came to his death by drinking carbolic acid for water by mistake in Travelers' Ins. Co. v. Dunlap, 160 Ill. 642, 643, 43 N. E. 765, 52 Am. St. Rep. 355; and to a case where by mistake the deceased drank chloral for distilled water in Metropolitan Accident Association v. Froiland, 161 Ill. 30, 36, 43 N. E. 766, 52 Am. St. Rep. 359.

A careful reading and thoughtful consideration have been given to the opinions in these and other cases, in order to determine whether the facts of the case in hand bring the death in this case clearly within the express exception in the certificate in suit. The terms of that exception differ radically from the terms of the exception in the leading case of Paul v. Travelers' Ins. Co., 112 N. Y. 472, 478, 20 N. E. 347, 3 L. R. A. 443, 8 Am. St. Rep. 758, the opinion in which is so sedulously followed in the other cases cited above. The opinion in that case was rendered before the Supreme Court so sharply called

a halt to the tendency at that time to treat contracts of insurance as a separate class, to be interpreted by the rule that, if the meaning of the contract were doubtful, the construction should be adopted which was most favorable to the assured, and to be assiduous to discover such a doubt. The decision in the Paul Case was rendered in 1889. In 1893 in Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 463, 14 Sup. Ct. 379, 38 L. Ed. 231, the Supreme Court in positive and vigorous language declared and enforced these rules:

(a) "That contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and, if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense." 151 U. S. 463, 14 Sup. Ct. 381, 38 L. Ed. 231.

(b) "For a comparatively small consideration the insurer undertakes to guarantee the insured against loss or damage, upon the terms and conditions agreed upon, and upon no other, and when called upon to pay, in case of loss, the insurer, therefore, may justly insist upon the fulfillment of these terms. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. * * * It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upn. It is enough that the parties have made certain terms conditions on which their contracts shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made." 151 U. S. 462, 14 Sup. Ct. 381, 38 L. Ed. 231.

[1] The opinions of the state courts, cited and considered, are entitled to and have received great respect and consideration, but they are not controlling authority in the federal courts on a question of commercial or general law, such as that presented by this suit. Nor do they relieve the members of this court from the duty of forming, declaring, and enforcing their own independent judgment upon it.

"It is not only the privilege, but the duty, of the federal courts, imposed upon them by the Constitution and statutes of the United States, to consider for themselves, and to form their independent opinions and decisions upon, questions of commercial or general law presented in cases in which they have jurisdiction, and it is a duty which they cannot justly renounce or disregard. Jurisdiction of such cases was conferred upon them for the express purpose of securing their independent opinions upon the questions arising in the litigation remitted to them. And a citizen of the United States who has the right to prosecute his suit in the national courts has also the right to the opinions and decisions of those courts upon every crucial question of general or commercial law or of right under the constitution or statutes of the nation which he presents." Independent School District v. Rew, 111 Fed. 1, 11, 49 C. C. A. 198, 55 L. R. A. 364, and cases there cited.

In the year 1898, in McGlother v. Provident Mutual Accident Company, 89 Fed. 685, 686, 32 C. C. A. 318, after considering and citing the opinions upon which counsel for the plaintiff chiefly rely, this court held, one judge dissenting, that a death resulting from poison taken under a mistaken belief that it was a harmless medicine fell within an exception from liability in the policy for death resulting wholly or in part from poison, and affirmed a judgment for the defendant. In the year 1899, in Fidelity & Casualty Co. v. Lowenstein, 97 Fed. 17, 38 C. C. A. 29, 46 L. R. A. 450, this court held, one judge dissenting, that

a death resulting from inhaling gas while sleeping in a room in a hotel did not· fall within an exception from liability in a policy for death resulting from poison, or anything accidentally, or otherwise, taken, administered, absorbed, or inhaled, and affirmed a judgment for the plaintiff. The two decisions are irreconcilable and the later overruled the earlier.

[2] Counsel for the plaintiff contend, as we understand their brief, that, in the absence of any decision of the Supreme Court upon the question, the later decision is controlling authority over this court, until that decision is reversed or modified by the Supreme Court. If that contention were sound, the decision and judgment in the Lowenstein Case would be erroneous, and should be disregarded, and the decision in the McGlother Case would be the law in this circuit, because the Supreme Court has never modified or reversed it. But the contention is not sound. The parties to the case in hand were not parties to either of the former cases and are not bound by the decisions therein. They are entitled to their day in court, and to the independent opinion of this appellate court upon the question presented by the facts of their case. An appellate court is not bound or estopped by its erroneous decision of a question of law, when that question is again presented by those who were not parties to the suit in which the erroneous judgment was rendered. And when, in a subsequent suit between new parties, it discovers that it has fallen into an error or·established a wrong rule of law, it is its duty to overrule its erroneous declaration and to establish the right rule. When in 1899 a majority of this court were convinced in the Lowenstein Case that the rule of law established by it in the McGlother Case was wrong, Lowenstein had the right to an overruling of that rule, to the establishment of the right rule and to a judgment in his favor. And now in the case at bar the defendant has invoked the consideration and decision in its case of the same question, or a like question, to that decided in the Lowenstein Case, and the members of this court may not lawfully renounce or evade the duty imposed by the Constitution and the laws of the United States, after taking into consideration the previous opinions of this court, and of the other courts whose opinions have been presented to them, to form, express, and put into effect their own independent opinion and judgment.

[3] Stripped of irrelevant parts, the portion of the contract which is decisive of the question at issue here reads in this way:

"* * * Nor shall the association be liable for indemnity for any death resulting wholly or in part from * * * poisonous substances, gases, or anything accidentally, or otherwise, taken or inhaled. * * *"

On the first reading of this stipulation, it seemed simple, its terms seemed unambiguous, and their plain, ordinary, and popular meaning clear. No suggestion arose in our minds that this clause of this contract relieved the defendant from liability for deaths from poisonous substances and gases taken or inhaled involuntarily; and did not exempt it from deaths from those taken or inhaled voluntarily, or that it relieved it from liability for deaths from such poisonous substances and gases taken or inhaled voluntarily, and did not exempt it

from deaths from those taken involuntarily. We read nothing of that nature in the contract. No discrimination between these two classes of deaths appeared upon the face of it or was suggested to the mind.

Nor have the opinions of the courts and the arguments and briefs of counsel divested us of the abiding conviction that this stipulation was intended to, and by its clear and simple terms does, exempt the defendant from all liability for indemnity for any death from poisonous substances, gases, or anything taken or inhaled, voluntarily or involuntarily, consciously or unconsciously. By its express terms, without exception or limitation, it declares that the defendant shall not be liable for any death from poisonous substances, gases, or anything accidentally, or otherwise, taken or inhaled. A death from poisonous substances, gases, or anything accidentally, or otherwise involuntarily and unconsciously taken or inhaled, is as much a death from poisonous gases, or anything accidentally, or otherwise, taken or inhaled, as is a death from those poisonous substances, gases, or anything accidentally, or otherwise, voluntarily and consciously taken or inhaled; and there is nothing in the stipulation of exemption which expresses or intimates any difference or distinction between the defendant's liability for deaths from voluntarily taking or inhaling and for deaths from involuntarily taking or inhaling.

The practical effect of the construction of this contract which counsel for the plaintiff seek would be to substitute for the existing contract that the association shall not be liable for indemnity for any death from poisonous gases, or anything accidentally, or otherwise, taken or inhaled, a contract that the defendant shall be liable for any death from poisonous substances, gases, or anything accidentally, or otherwise, taken or inhaled, except in cases where the poisonous substances were voluntarily and consciously taken and inhaled; a course of action that flies in the teeth of familiar rules of construction of contracts and statutes.

[4] The parties to insurance contracts have the right and power to contract for what accidents and risks the companies shall and for what accidents and risks they shall not be liable and the courts may not make new or different contracts for them. The function and duty of the courts consist simply in enforcing and carrying out the contract actually made by the parties. Imperial Fire Ins. Co. v. Coos County, 151 U. S. 452, 462, 14 Sup. Ct. 379, 38 L. Ed. 231.

[5, 6] The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. Delaware Ins. Co. v. Greer, 120 Fed. 916, 921, 57 C. C. A. 188, 61 L. R. A. 137; Standard Life & Accident Ins. Co. v. McNulty, 157 Fed. 224, 226, 85 C. C. A. 22. The reasonable and probable meaning of a stipulation in an agreement should be preferred to one that is irrational and improbable. Pressed Steel Car Co. v. Eastern Railway Co. of Minnesota, 121 Fed. 609, 611, 57 C. C. A. 635. Where the parties to an agreement have expressly contracted in writing that an insurance company shall or shall not be liable for a certain class of risks or accidents and have made no exception

of any of them, the conclusive legal presumption is that they intended to make none, and it is not the province of the courts to do so. In suits on written contracts, courts may lawfully give effect to the intentions of the parties, expressed in the writings only. To give effect to the intention of the parties which the plaintiff now alleges would be to ascribe to them a purpose, and to make and enforce for them a contract which their writings neither express nor suggest and this is beyond the province of the courts. Cold Blast Transportation Co. v. Kansas City Bolt & Nut Co., 114 Fed. 77, 81, 52 C. C. A. 25, 57 L. R. A. 696; Missouri, Kansas & Texas Ry. Co. v. Bagley, 60 Kan. 424, 430, 56 Pac. 759.

And our conclusion is that the written certificate of insurance here in suit clearly and unequivocally expresses the intention and constitutes a binding contract of the parties to it that the defendant shall not be liable for indemnity for any death resulting from poisonous substances, gases, or anything accidentally, or otherwise, taken or inhaled by Mr. Christy, that Mr. Christy's death was such a death resulting from his taking or inhaling such substances and that, whether he took or inhaled them consciously or unconsciously, voluntarily or involuntarily, the defendant is by the express terms of the contract exempt from liability for indemnity therefor.

It is with satisfaction that we call attention to the fact that the Supreme Court of Iowa, in an action upon a certificate of insurance of the defendant in the same terms as that in the case at hand, where the death resulted from unconsciously and involuntarily inhaling gas when sleeping, after a studious consideration of the authorities and reason of the case, reached the same conclusion in 1918 in Jones v. Hawkeye Commercial Men's Association, 184 Iowa, 1299, 168 N. W. 305, 11 A. L. R. 380, and such was the opinion of Judge Blodgett, of the Northern District of Illinois in 1891, in Richardson v. Travelers' Ins. Co. (C. C.) 46 Fed. 843, and of this court in 1898, in McGlother v. Provident Mutual Accident Co., 89 Fed. 685, 689, 32 C. C. A. 318. See, also, Porter v. Preferred Accident Co., 109 App. Div. 103, 95 N. Y. Supp. 682; Id., 186 N. Y. 599, 79 N. E. 1114.

Let the decree below be reversed, and let the case be remanded to the District Court, for further proceedings in accordance with the views expressed in this opinion.