## H. Tremblay

*vs.*

## L. Harry Soucy and Maryland Casualty Company.

Androscoggin.    Opinion, January 6, 1934.

*James H. Carroll*, for plaintiff.
*Skelton & Mahon*, for defendants.

BARNES, J.    Action of debt. On report. The Town of Sanford, desiring the construction of an addition to a high school building, executed a contract with plaintiff, whereby the latter agreed and undertook to furnish the labor and materials for and construct the addition, and gave bond to secure said Town against any loss or damage arising out of liens or claims for labor or materials.

Plaintiff did not construct the addition, but secured defendant Soucy, as subcontractor; the work was done, the subcontractor paid in full, and it then appeared that three materialmen had not been fully paid by defendant for materials furnished by them and used by defendant in construction. One filed a lien claim, which plaintiff paid; the others refrained from filing lien claims, at the request of plaintiff, and he afterwards paid them. For the sum of these bills, $1,426.46, plaintiff brought suit.

In the lower court, by agreement of parties, the case was reported to this court upon an agreed statement of facts, for final determination and disposition upon the merits in accordance with law.

Defendant Soucy operated under a written contract with plaintiff, binding himself to furnish all labor and material and to do and perform all the work required, and to finish the work as provided in the general contract between contractor and owner.

The "general contract" between the Town and plaintiff is not before us, and we may assume nothing as to its contents.

Subsequent to the execution of the building contract a bond, duly executed by defendant Soucy as principal and defendant Maryland Casualty Company as surety, in consideration of a premium then agreed upon and afterwards paid to it by said Soucy, was furnished to plaintiff, conditioned that Soucy would well and truly perform and carry out the covenants, terms and conditions of said agreement.

Plaintiff's contention is that the surety company is liable to him for what he paid materialmen, by virtue of the bond given.

We find, however, no such obligation under the bond.

Soucy contracted to furnish the building material, and the surety company that he would perform his covenants; but the

surety company did not contract that Soucy would pay material-men, unless it be held that an agreement to "furnish" building material means to provide and pay for such material.

It may be good business, at a price, for sureties to guarantee title to material.

But in the absence of statute to that effect, and Maine has none such, it is universally held that mere agreement to "furnish" material does not guarantee title.

"Contracts of suretyship should be interpreted like other classes of contracts, according to the sense and meaning of the terms which the parties have used, and those terms should be taken, understood and given effect in their plain, ordinary and popular sense, fairly and justly to all the parties to the contracts." *United States Fidelity & Guaranty Co.* v. *Centropolis Bank of Kansas City Mo. et al*, 17 Fed., 2nd Series, 913, 53 A. L. R., 295.

"The natural, obvious meaning of the provisions of a contract should be preferred to any curious, hidden sense which nothing but the exigency of a hard case and the ingenuity of a trained and acute mind would discover. . . . Where the parties to an agreement have expressly contracted in writing that an insurance company shall or shall not be liable for a certain class of risks or accidents, and have made no exception of any of them, the conclusive legal presumption is that they intended to make none, and it is not the province of the courts to do so. In suits on written contracts, courts may lawfully give effect to the intentions of the parties, expressed in the writings only." *Hawkeye Commercial Men's Association* v. *Christy*, 294 Fed., 208, 40 A. L. R., 46, 52.

"The surety had a right to define and limit its liability even although it resulted in the failure of the obligee to get the security that he intended to obtain and thought that he had procured. Liability can not be founded except upon the reasonable import of all the terms of a bond, otherwise a surety would be held not on the contract as actually made, but on that which the court might determine that he intended to enter into. It is not sufficient that he 'sustain no injury by a change in the contract, or that it may even be for his benefit.' " *Miller* v. *Stewart*, 9 Wheat., 680, 703; *United States* v. *Boecker*, 21 Wall, 652, 657.

"The decisions, in cases where bonds have been given by a corpo-

ration organized for the express purpose of giving security, under which the rule so often declared as to the strictness with which bonds should be construed has been somewhat relaxed, do not aid the plaintiff.

"Such decisions are inapplicable where liability is beyond the scope of the undertaking." *Burdett* v. *Walsh et al*, 235 Mass., 153, 126 N. E., 374, 375.

"Now in this case each contract, with the bond securing its performance, is in one paper signed by the three parties, Galm, as contractor, this defendant as surety, and the city of Columbia as the party letting the work. In that paper Galm agrees to furnish the material for the work, but he does not agree to pay for it.

"The words of his obligation, as therein expressed, are that he 'shall furnish all tools, material, and labor necessary or required to perform the work.'

"An agreement to furnish a thing to be used in a certain work is not an agreement as to how it shall be obtained.

"The contractor may have it on hand, or he may make it, or he may acquire it as he will, if he furnishes it, he complies with his obligation as expressed in his contract. If he purchase such material, from another, he thereby is obliged to that other by that contract of purchase to pay him, but such contract is a distinct matter unconnected with his contract to perform the work." *Fellows* v. *Kreutz* (Mo.), 176 S. W., 1080, 1081.

"In the contract itself the construction company agrees 'to furnish and deliver all the materials and to do and perform all the work and labor' necessary to complete its undertaking. But this is not the equivalent of a promise to pay subcontractors. And such a promise is necessary before the casualty company can be held." *Mason* v. *Portland Const. Co. et al* (N. H., 1932), 160 Atl., 477.

"It is argued for appellants that, as the contract required Opdahl to *furnish* all the materials, this was equivalent to an agreement on Opdahl's part to pay for the same, and that the bond having been given to secure the faithful performance of the contract the surety company can be held liable for the amount due for materials furnished to Opdahl by appellants.

"The word 'furnish' in the contract would in a settlement between the United States and Opdahl, of course, be given its full

significance, but we can not hold that as against the Surety Company, the word 'furnish' shall be given the broad meaning contended for by counsel for appellants. No case has been cited by counsel for the appellants parallel in all its facts to the case at bar. When all is said the case is simply this: That Opdahl by his contract agreed to give a bond obligating himself to pay the claims of materialmen, but he failed to give any such bond. The surety company signed the bond which was executed, and no other. The bond itself did not provide for the payment of materialmen, nor did the contract contain any such provision." *Babcock & Wilcox et al v. American Surety Co. of New York,* 236 Fed., 340.

Under a contract that the contractor shall "provide" all material, and a bond that he shall "duly perform said contract," held:—"Unless the sureties agreed to be bound for debts due persons for furnishing material, there is no legal reason why they should be held liable in this action." *Greenfield Lumber & Ice Co. v. Parker et al,* 159 Ind., 571, 65 N. E., 747.

"We consider the true rule to be that there must not only be an intent to secure some benefit to the third party, but there must be a promise, legally enforceable. The contract and bond in this case fail to meet these requirements." *Electric Appliance Company* v. *U. S. Fidelity & Guaranty Company,* 110 Wis., 434, 85 N. W., 648, 53 L. R. A., 609.

To the same effect see, *Sterling* v. *Wolf,* 163 Ill., 467, 45 N. E., 218; *Green Bay Lumber Co.* v. *School District,* 121 Iowa, 663, 97 N. W., 72; *Village of Argyle* v. *Plunkett et al,* 226 N. Y., 306, 124 N. E., 1; *Scott-Graff Lumber Co.* v. *Independent School District No.* 1, 112 Minn., 474, 128 N. W., 672; *Warner et al* v. *Halyburton et al* (N. C.), 121 S. E., 756; *City of Ocala* v. *Continental Casualty Co.* (Fla.), 127 So., 326; *Puget Sound Brick, Tile & Terra Cotta Co.* v. *School District No.* 73, 12 Wash., 118, 40 Pac., 608, and in note to Ann. Cas., 1916 A., 759.

Such being the law, and since, as is the agreed statement, "The defendant, Soucy, contracted for and had delivered and incorporated into said building the labor and materials necessary for and did and completed the work required of him by his contract in accordance with the plans and specifications," to the satisfaction of the architects, we find,            *For the defendants.*