## EDWARDS *v.* TRAVELERS' LIFE INS. CO.

*Circuit Court, N. D. New York.* June 27, 1884.)

1. LIFE INSURANCE—INVOLUNTARY SUICIDE.
   A condition in a policy of insurance that it shall be void if the insured shall die by suicide, whether the act be voluntary or involuntary, has no application where the insured, a sane man, kills himself by accident.

2. SAME—SUICIDE—INTENTION OF INSURED IN THE ACT.
   In case of death of insured by his own act there must be some proof, or at least, a presumption that such act was intentional on his part.

3. SAME—NEW TRIAL—EVIDENCE—OFFER OF A PAPER.
   A new trial will never be granted because defendant offered in evidence a paper that plaintiff should have offered.

4. SAME—WAIVER BY COMPANY.
   An insurance company may waive a strict performance of the contract. Receiving and acting on an oral notice is a waiver of written notice.

Motion for New Trial.

*William N. Cogswell*, for plaintiff.

*Henry M. Field*, for defendant.

Coxe, J. This action is upon a policy of life insurance. At the January circuit the plaintiff had a verdict. The defendant now moves for a new trial. On the trial the principal contention had reference to the defense of suicide. The defendant succeeded in proving that the insured died in circumstances peculiar and suspicious in many of their aspects. The precise cause of death was left to conjecture. Stated as strongly for the defendant as the evidence warrants, the facts were, perhaps, sufficient, had the jury adopted the defendant's theory, to justify them in the presumption that the insured took his own life. They did not so find, and their verdict must be regarded as conclusive upon this issue.

It is insisted that the court should have charged, as requested, that the evidence was clear and positive that the insured committed suicide. I cannot adopt this view. The evidence was not clear and positive. The insured might have died from the effects of poison and he might have died from apoplexy produced by excessive heat. The defendants proved that 96 hours after death prussic acid was found in his stomach. Whether there was enough to produce death could only be presumed. No quantitative test was made. Assuming, however, that he died from prussic acid poisoning, there was no evidence as to how it was taken or that it was taken knowingly. But it is argued that whether taken ignorantly or designedly is wholly immaterial, and that the court fell into error in charging the jury that in order to reach a verdict for defendant they must find not only that there was poison sufficient to cause death but also that the insured took it knowingly and not by mistake. No authority is produced sustaining this position which seems wholly at variance with justice and common sense. Test it by an illustration. A sportsman is shot to death by the accidental discharge of his own fowling-piece; a woodman is killed by the premature fall of a tree which he himself has felled; an infectious cut from his own scalpel causes the death of an anatomist. Strictly speaking, each dies by his own hand, but can it be seriously maintained that a life policy providing that it shall be void if the insured "shall die by suicide, whether the act be voluntary or involuntary" would be avoided in such circumstances? No court has yet enunciated a doctrine so untenable, and it is believed none ever will. Life insurance is intended to cover just such risks; its chief benefits are found in cases of sudden death. But the precise question was determined by the court of appeals of this state in *Penfold* v. *Universal Life Ins. Co.* 85 N. Y. 317.

The plaintiff offered in evidence a receipt for the first annual premium, but, relying on certain admissions of the answer, did not produce the policy of insurance. Defendant objected to the receipt unless read in connection with the policy, and the refusal of the court to so rule is alleged as error. The answer is twofold: *First*, it was not incumbent on the plaintiff under the pleadings to produce the policy; and, *second*, the question at best relates only to the order of

proof, and as the policy was subsequently offered and the jury properly instructed as to the burden of proof the mistake was cured, assuming that there was a mistake. A new trial will hardly be granted because the defendant offered in evidence a paper which the plaintiff should have offered.

It is also argued that there was a fraudulent concealment of certain facts by the plaintiff and that the court should have so declared. Regarding this proposition it is sufficient to say that all the evidence there was upon this subject, and there was but little, was submitted to the jury with instructions as favorable to the defendant as it could fairly ask.

The other defenses are of a formal and technical character and relate to the alleged failure of the plaintiff to give immediate notice in writing of the death of the insured, and to furnish proofs of death in accordance with the strict letter of the contract. No attempt will be made to conceal the fact that such defenses do not commend themselves to the court. They in no way involve the merits, and it is not easy to see how the omissions referred to injured the defendant or impaired any of its rights. True, the parties entered understandingly into the agreement, and if the court is clearly satisfied that it has been violated, even in an apparently unimportant particular, it should so say. But where a life insurance company seeks to avoid the sacred obligation which it has assumed, because, for instance, a fact is communicated to it orally instead of in writing, the court should be very sure of the rectitude of such a defense before permitting it to succeed. These policies are prepared with great care by those in the companies' employ, they are surrounded by agreements and warranties innumerable—a labyrinth of conditions, where one heedless or uninformed may easily go astray. To construe them narrowly and illiberally is not the policy of the courts. A strict construction would often work injustice to both parties alike. To the insured, by permiting nonessentials to defeat an equitable claim; to the insurer, by shaking the confidence of the people in the system of life insurance.

The condition here alleged to have been violated is in these words:

"That in the event of the death of the person insured, then the party assured, or his or her legal representatives, shall give immediate notice, in writing, to the company, at Hartford, Connecticut, stating the time, place, and cause of death, and shall within seven months thereafter, by direct and reliable evidence, furnish the company with proofs of the same, giving full particulars, without fraud or concealment of any kind."

The facts are as follows:

The insured died June 19, 1882. A day or two afterwards E. M. Phillips, who is described in the receipt referred to, as "agent of this company at Southbridge, Massachusetts," met one of the family of the deceased on the street, informed him that he was going to Hartford and would give the company the requisite notice and procure the necessary blanks for the proofs of death. He did go to Hartford on or about the twenty-first of June, saw the secretary of the company, gave him notice of the death, stating all the

the particulars which he then knew and obtained the blank proofs. On his return he handed the blanks to one of the plaintiff's representatives saying at the time, "When you get them completed I want you to return them to me." They were filled out and delivered to him July 3, 1882. He retained them for several months and then returned them to a brother of the plaintiff saying that they were incomplete, and demanded additional information. On the twenty-ninth of January, 1883, they were again delivered to Phillips and by him sent to the company on or about the seventh of February. The company, in acknowledging the receipt of the proofs, made no objection that they were received too late and retained them in its possession: they were produced on the trial by the defendant's counsel.

It must be held that if the plaintiff has not followed the contract literally in these particulars it was because she was misled by the course of the defendant, and that the defendant is not now in a position to take advantage of the plaintiff's omissions, having waived a strict performance of the contract.

I have examined other exceptions argued, but do not think any of them well taken.

The motion for a new trial is denied.