THE FIDELITY AND CASUALTY COMPANY OF NEW YORK

*v.*

JOHN D. WATERMAN, Admr.

632:40 LRA 6

*Filed at Ottawa May 12, 1896.*

1. INSURANCE—*asphyxiation by gas—clause of accident policy construed.* Death from asphyxiation by illuminating gas while the assured was asleep is not within a clause of an accident insurance policy providing that the insurance does not cover "injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled."

2. SAME—*definition of word "absorbed" in accident policy.* The word "absorbed," in a clause of an accident insurance policy providing that such policy does not cover injuries from poison or anything accidentally or otherwise absorbed or inhaled, refers only to the process of absorption by sucking up or imbibing through the pores of the body.

3. SAME—*when act excepted by policy must be voluntary.* The words "absorbed or inhaled," in a clause of an accident insurance policy providing that such policy does not cover injuries from anything accidentally or otherwise absorbed or inhaled, imply a voluntary and intelligent act as distinguished from an involuntary and unconscious act.

4. APPEALS AND ERRORS—*points not made in briefs in Appellate Court not considered.* An objection not raised by the briefs in the Appellate Court cannot be renewed or made for the first time in the Supreme Court.

*Fidelity and Casualty Co.* v. *Waterman,* 59 Ill. App. 297, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Winnebago county; the Hon. JOHN D. CRABTREE, Judge, presiding.

WILLIAM G. CHALLIS, and GARVER & FISHER, for appellant.

ARTHUR H. FROST, and ROBERT G. McEVOY, for appellee.

Mr. JUSTICE BAKER delivered the opinion of the court:

The accident insurance policy in suit in this cause was issued by the Fidelity and Casualty Company of New York on June 14, 1891, to James B. Marshall, the intestate of appellee, insuring him in the sum of $5000 against death through external, violent and accidental means for the term of twelve months, ending June 14, 1892. The policy also made provision for a weekly indemnity in case of bodily injury through like means but not causing death. The policy was afterwards renewed for an additional term of one year, from June 14, 1892. The intestate was asphyxiated by illuminating gas in the Northwestern Hotel at Aurora, Illinois, on the night of December 5, 1892. He was found dead in bed on the morning of December 6, and the room was full of gas. At the trial there was evidence tending to prove that the gas fixtures in the room were defective, and there was also evidence tending to prove that the deceased was intoxicated at the time of the accident, and that his death was attributable to such intoxication. The case was tried before the court without a jury, and a number of written propositions were submitted to it by appellant to be held as law in the decision of the case, but they were all refused and exceptions taken. The finding and judgment were for the plaintiff below, and that judgment was affirmed in the Appellate Court.

The principal defenses relied on by appellant are based upon provisions in the policy which read as follows: "This insurance does not cover disappearances; nor war risk; nor voluntary exposure to unnecessary danger; nor injuries, fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled; nor injuries, fatal or otherwise, received while or in consequence of having been under the influence of or affected by, nor resulting directly or indirectly from, intoxicants, anesthetics, nar-

cotics, sunstroke, freezing, vertigo, sleep-walking, fits, hernia, or any disease or bodily infirmity."

One ground of defense is, that since the policy expressly states that the insurance does not cover injuries resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled, and the deceased came to his death by means of the illuminating gas which he inhaled while asleep, therefore, according to the true intent and meaning of the contract, appellant is not liable to the administrator for the sum of $5000, stipulated to be paid in case of the death of his intestate as the result of external, violent and accidental means.

In *Travelers' Ins. Co.* v. *Dunlap*, 160 Ill. 642, this court held, that drinking carbolic acid by mistake for peppermint is not within a clause of an accident insurance exempting the company from liability for injuries or death from "taking poison," as such words mean the voluntary, intentional taking of poison, and do not include cases of accidental poisoning by mistake, but do include injuries or death from voluntarily taking poison without any suicidal intent. And this court, in its opinion, referred with approval to the decision of the Court of Appeals of New York in *Paul* v. *Travelers' Ins. Co.* 112 N. Y. 472, and said (p. 645): "We think the rule established by the Court of Appeals of New York one better calculated to carry out the true intention of the parties when the contract of insurance was entered into, and one, too, more nearly in harmony with the current of authority bearing on the question." In the *Paul case*, thus referred to, the policy provided that the insurance should not extend to any death or disability which may have been caused by the taking of poison, contact with poisonous substances or inhaling of gas, and it appeared that the insured was found dead in bed in his room at a hotel, and that the gas had in some way been turned on and his death caused by breathing the atmosphere of the room filled with gas, and it was held that the death was not caused by "the

inhaling of gas," within the meaning of the policy, and that those words applied only to a voluntary and intelligent action on the part of the insured, such as in medical or surgical treatment, for dental work, or with a suicidal purpose. And in the subsequent case of *Bacon* v. *United States Mutual Aid Ass.* 123 N. Y. 304, the Court of Appeals approved the decision in the *Paul case,* and said: "Upon the question decided the case is conclusive, and we have no disposition to alter our views as expressed therein."

In *Pickett* v. *Insurance Co.* 144 Pa. St. 79, where there was a condition that the insurance should not cover death or injury resulting from or attributable partially or wholly to inhalation of gas, and the insured went down into a well to make repairs on a pump, and in a short time was found in the well dead from asphyxia caused by poisonous gas at the bottom of the well, it was held that the condition in the policy against "inhalation of gas" contemplated a voluntary and intelligent act by the insured,—not an involuntary and unconscious act,—and was inoperative to relieve the company from liability. See, also, *Metropolitan Accident Ass.* v. *Froiland,* (*ante.* p. 30.)

It is urged that the exception in the case at bar is broader and more sweeping than the words found in the cases heretofore decided, the words here being, "poison or anything accidentally or otherwise absorbed or inhaled," and that these words necessarily include every possible way by which irrespirable gases can be got into the human system so as to cause death. The additional word "absorbed," found in the language last above quoted, has no application to the case before us, for that word manifestly has reference only to the process of absorption by sucking up or imbibing through the pores of the body. The claim made is not well grounded, if the correctness of the point decided in the cases we have mentioned be conceded. That point, as we understand it, is, that the word "inhaling" or "inhalation" or "inhaled," as used in exceptions contained in these policies of life or

accident insurance, implies a voluntary and intelligent act, as distinguished from an involuntary and unconscious act. Read in the light of the decisions, the words now in question do not mean otherwise than if they explicitly read, "poison or anything accidentally or otherwise, consciously and by an act of volition, drawn into the system by inspiration."

This view is fully supported by a late decision of the Court of Appeals of New York. That court had before it, in *Menneilly* v. *Employer's Liability Ass. Corp.* 23 N. Y. Supp. 230, the case of a provision in an accident policy that it does not insure against death or disablement from anything accidentally inhaled. The insured had died at night of asphyxia, caused by involuntarily and accidentally breathing into his lungs, while asleep, illuminating gas which had accidentally escaped into his room at a hotel. It was held that the case was not distinguishable, in principle, from the *Paul case*, and that the provision in the policy did not relieve the insurer from liability. And we may add, that this *Menneilly case*, which had then just been published, was cited by this court with approval in *Travelers' Ins. Co.* v. *Dunlap, supra.*

Appellant claims that to place the construction we have upon the policy is not to enforce the contract made by the parties, but to make a new contract for them. This can hardly be so. Appellant is a New York corporation, and made and dated its contract in the city of New York,—and this was done several years after the decision in the *Paul case* by the court of last resort in that State. It must be presumed that it was then fully advised of that decision, and knew, when it entered into the contract now in suit, what its liabilities were under the agreement that it made.

The policy in suit contains a stipulation that the insurance does not cover injuries, fatal or otherwise, received while or in consequence of having been under the influence of or affected by, nor resulting directly or

indirectly from, intoxicants. In its brief and argument prepared for this court, all that appellant says in regard to this provision is this: "While the Appellate Court finds the fact of intoxication against us, we submit that it was error to refuse the propositions on this point, and respectfully refer to clause 2 of our brief in the Appellate Court, hereto annexed, where this point is considered." Turning to said clause 2, we find that the matter of intoxication is neither mentioned nor discussed therein otherwise than as a contested question of fact, and we also find that neither in that clause nor elsewhere in the brief is there any mention of or reference to any proffered propositions relating to the subject of intoxication, and we further find that the Appellate Court, in rendering its judgment, passed upon no such propositions of law. If any such refused propositions are to be found in the record, it must be considered, as we have held in numerous cases, that appellant waived in the Appellate Court all objections to the rulings of the trial court thereon, and cannot renew such objections or make them for the first time in this court.

It is further claimed that there was no compliance with the condition of the policy that affirmative proof of death must be furnished to the company within two months from time of death. It is a sufficient answer to say that there is evidence in the record tending to show a waiver by appellant of proofs of death; that the judgments of the circuit and Appellate Courts conclusively establish the fact of such waiver, and that no propositions of law were either held or refused which stated what would or would not, in law, constitute a waiver.

We find no error in the record for which the judgment can be reversed. It is therefore affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, having heard this case in the Appellate Court, took no part here.