FIDELITY & CASUALTY CO. OF NEW YORK v. LOWENSTEIN.

(Circuit Court of Appeals, Eighth Circuit. October 2, 1899.)

No. 1,180.

1. ACCIDENT INSURANCE—CONSTRUCTION OF POLICY—EFFECT OF PRIOR ADJUDICATION.

In an action on an insurance policy containing a provision which had, prior to the issuance of such policy, been given a uniform judicial construction by the courts of last resort of several states, such construction will be adopted as the one presumably intended by the parties.[1]

2. SAME—DEATH FROM INHALING GAS.

An accident policy contained a provision that the insurance should not cover "injuries, fatal or otherwise, resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled." Prior to the issuance of the policy such provision in another policy issued by the same company had been construed by the supreme court of a state, and held not to exempt the company from liability for the death or injury of the insured resulting from the unconscious and involuntary inhaling of illuminating gas while asleep, and in another state policies containing similar provisions had received a similar construction. *Held*, that the same construction would be adopted by the court in an action on such later policy for the death of the insured from the same cause, regardless of the views which the court might hold if the question was res integra.[2]

Sanborn, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Western District of Missouri.

O. H. Dean (De Lagnel Berier, William Warner, W. D. McLeod, and Hale Holden, on the brief), for plaintiff in error.

I. J. Ringolsky (L. C. Krauthoff, on the brief), for defendant in error.

Before CALDWELL, SANBORN, and THAYER, Circuit Judges.

THAYER, Circuit Judge. This action is founded on a policy of accident insurance which was issued to Emanuel Lowenstein, of Kansas City, Mo., the husband, in his lifetime, of Sophia Lowenstein, the defendant in error, who was the plaintiff in the trial court. The policy took effect originally on January 16, 1896, for the term of one year, but was renewed for another year on January 16, 1897, as the plaintiff below claimed, and as the jury appear to have found. The policy in suit insured the plaintiff's husband, Emanuel Lowenstein, "against bodily injuries sustained through external, violent, and accidental means"; and the insurer further agreed that, "if death shall result within ninety days from such injuries, independently of all other causes, the company will pay the principal sum of this policy to Sophia Lowenstein, his wife, if surviving, or, in event of her prior death, to the legal representatives of the assured. * * *" A subsequent provision found in the policy, over which the chief controversy arises, is as follows:

"(5) This insurance does not cover disappearances; nor war risks; nor voluntary exposure to unnecessary danger; nor injuries, fatal or otherwise, result-

---

[1] As to state laws as rules of decision in federal courts, see note to Wilson v. Perrin, 11 C. C. A. 71, and, supplementary thereto, note to Hill v. Hite, 29 C. C. A. 553.

[2] As to accident insurance, see note to National Acc. Soc. of City of New York v. Dolph, 38 C. C. A. ——.

ing from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled; nor injuries, fatal or otherwise, received while or in consequence of having been under the influence of, or affected by, or resulting directly or indirectly from, intoxicants, anæsthetics, narcotics, sunstrokes, freezing, vertigo, sleep walking, fits, hernia, or any disease or bodily infirmity."

The plaintiff below claimed, and the jury so found, that on the night of February 7, 1897, the plaintiff's husband retired to his room in a hotel in New York City, to which place he had gone temporarily on business, being at the time in a healthy physical and mental condition, and that while asleep in his room he died from asphyxia and suffocation, "the result of unconsciously, involuntarily, and unintentionally, and accidentally" inhaling gas into his lungs while asleep, which had escaped from a gas pipe into said room without the deceased's knowledge. The trial court ruled, in substance, that a death so occasioned was within the provisions of the policy, and entitled the plaintiff to recover. In accordance with that ruling, which is the principal error assigned, there was a verdict and judgment in favor of the plaintiff below.

Whether the foregoing ruling by the trial court was right, and should be upheld in the case at bar, should be determined, we think, not solely with reference to the provisions of the policy as if they had never undergone judicial construction, but in the light of the following well-known facts and circumstances: On March 5, 1889, the court of appeals of New York was called upon to construe an accident policy issued by the Travelers' Insurance Company, which contained a provision, among others, that the insurance granted by its policy should not extend "to any bodily injury of which there shall be no external or visible sign upon the body, * * * nor to any death or disability which may have been caused * * * by the taking of poison, contact with poisonous substances, or inhaling of gas, or by any surgical operation or medical treatment"; and it was held that, in expressing its intention not to be liable for a death occasioned by "inhaling gas," the company must be understood to have meant a voluntary and intelligent act on the part of the insured, as distinguished from one which was unconscious, and in that sense involuntary, and it was accordingly decided that the company was liable under its policy in a case where the insured was asphyxiated by illuminating gas which he unconsciously, involuntarily, and accidentally inhaled while asleep in his room at a hotel. Paul v. Insurance Co., 112 N. Y. 472, 20 N. E. 347. See, also, Bacon v. Association (decided Oct. 11, 1890) 123 N. Y. 304, 25 N. E. 399, and Menneiley v. Assurance Corp. (decided March 3, 1896) 148 N. Y. 596, 43 N. E. 54, where the ruling in the previous case was reaffirmed. The decision of the court of appeals of New York was followed and aproved by the supreme court of Pennsylvania in an opinion which was filed by that court on October 5, 1891, after the case had been twice argued. Pickett v. Insurance Co., 144 Pa. St. 79, 22 Atl. 871. The latter case involved a construction of the same provision which the New York court had previously construed, and the ruling was that a death by inhaling gas was caused by external, violent, and accidental means, within the meaning of the policy, and that, where gas was inhaled

involuntarily and unconsciously by the insured, the insurer was liable, notwithstanding the exception in its policy with respect to death occasioned by the inhalation of gas.

Following these decisions, the Fidelity & Casualty Company of New York, the present plaintiff in error, was sued in the state of Illinois upon a policy that it had issued containing the same provisions as the policy in suit, which we have quoted above. The insured in the Illinois case was asphyxiated in his room at a hotel by illuminating gas which he inhaled unconsciously, involuntarily, and accidentally while asleep at night, and his administrator claimed that the insurer was liable under the provisions of its policy. The case came before an appellate court (Casualty Co. v. Waterman, 59 Ill. App. 297), and was decided on May 28, 1895, about nine months before the policy in suit was originally issued; the court holding that the insurer was liable because the act of the deceased in inhaling gas was neither conscious nor voluntary, but, on the contrary, was found to have been unconscious, involuntary, and accidental. The view taken by the appellate court was subsequently approved by the supreme court of the state on May 12, 1896 (Id., 161 Ill. 632, 44 N. E. 283), about nine months before the policy in suit was renewed.

In view of the foregoing, we are of opinion that the construction placed by the learned judge of the trial court (vide 88 Fed. 474) upon the fifth clause of the policy in suit should be upheld, irrespective of what our view might be if the question was res integra, or if the policy had been executed in this circuit subsequent to the decision in McGlother v. Accident Co., 60 U. S. App. 705, 32 C. C. A. 318, and 89 Fed. 685. The defendant company issued the policy in suit, and doubtless many others of a like character, after it was advised by the decisions to which reference has been made, one of which was a construction of its own contract, that, as interpreted by the courts of last resort in several states, the policy as drawn would not exempt it from liability if a poisonous gas was unconsciously, involuntarily, and accidentally inhaled by the insured, which occasioned his death or injury. It had knowledge, therefore, that, by reason of such adjudications, its policies, if they continued to issue them in the old form, would in all probability be accepted by some, and possibly many, persons, upon the understanding that the company intended to and did in fact assume the species of risk last described. If such was not its intention, its plain duty was to so modify the language of its policies as to make its purpose clear, inasmuch as a slight change in the phraseology theretofore employed would have left no room for doubt or speculation as to its meaning. We are unwilling to concede that an insurance company may continue to issue policies without any modification of their terms, after certain provisions thereof have been construed by several courts of the highest character and ability, and be heard to insist, in controversies between itself and the insured with respect to such subsequently issued policies, that they do not in fact cover risks which they had been judicially adjudged to cover before they were issued. While it may not be accurate to say that under such circumstances a technical estoppel arises in favor of the insured, yet the courts in such cases should

rigidly enforce the rule requiring policies of insurance to be construed most strongly against the insurer, and they should not hesitate to hold that decisions construing a policy adversely to the contention of the insurer thereafter create a doubt as to its proper interpretation of sufficient gravity to be resolved in favor of the insured.    National Bank v. Insurance Co., 95 U. S. 673; Anderson v. Fitzgerald, 4 H. L. Cas. 484, 507; Indemnity Co. v. Dorgan, 16 U. S. App. 290, 309, 7 C. C. A. 581, and 58 Fed. 945, 956, and cases there cited.    In a case decided by this court (Manufacturing Co. v. Jones, 32 U. S. App. 32, 14 C. C. A. 30, and 66 Fed. 124), where a doubt arose from the form of a contract which was in very general use by a manufacturing company, and which had been prepared by it, whether the contract imposed a joint or a several liability, and different views of that question had been taken by different courts, it was held to be the duty of the party by whom the contract had been prepared to so modify its provisions for future use as to avoid the doubt which had arisen as to its true interpretation, and that, not having done so, the contract would be construed most strongly against the party who had prepared it, in a suit brought by such party to enforce it.    The rule observed in that case is strictly applicable to the case at bar, and should lead to an affirmance.    No other questions are presented by the record which, from our point of view, require special notice.    The jury, we think, were correctly instructed on all the debatable issues, and there was abundant evidence to sustain the verdict.    The judgment below is therefore affirmed.

SANBORN, Circuit Judge (dissenting).    I am unable to concur in the decision and opinion of the majority in this case.    My mind will no more yield its assent to the proposition that an injury from poison involuntarily and unconsciously taken or inhaled is not included within the exception of "injuries fatal or otherwise, resulting from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled," than it will to the mathematical proposition that two and two are five.    The assent to either, and to one as much as to the other, brings to it a certain feeling of self-stultification to which it will not subject itself.    It seeks in vain for answers consistent with the former proposition to the questions, if gas is unintentionally and unconsciously taken or inhaled, why is it not "accidentally" taken or inhaled?    If it is not, then why is it not "otherwise" taken or inhaled?    And how can gas get into the system in any other way than by being "accidentally or otherwise taken, administered, absorbed, or inhaled"?

The suggestion that, when the courts held that an injury or death resulting from unconsciously inhaling gas was not covered by the form of exception contained in the policies against accident, it was the duty of the plaintiff in error to change the form of its policies, and to make its intention to except such a death or injury clear, is robbed of all its cogency by the fact that this company and the other accident insurance companies did just that thing.    The exception in Paul v. Insurance Co., 112 N. Y. 472, 20 N. E. 347, was of "any death or disability which may have been caused  *  *  *  by the taking

of poison, contact with poisonous substances, or inhaling of gas." When in that case, and in Pickett v. Insurance Co., 144 Pa. St. 79, 22 Atl. 871, the courts held that this exception did not extend to death from accidentally, unconsciously, and involuntarily inhaling gas, the companies abandoned this old form of exception, and inserted one to the same effect as that in the policy here in suit, that "this insurance does not cover * * * injuries, fatal or otherwise, resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled." If the intention to except from the insurance all injuries from taking or inhaling poison can be expressed in plainer words or less ambiguous terms than these, they do not occur to me, and I am able to discover but one case in the books before this one which holds that these words do not mean what they seem to me to plainly express, and that is the case of Casualty Co. v. Waterman, 161 Ill. 632, 44 N. E. 283. In that case the court reached its conclusion by interpolating into the exception words which the parties to the contract never placed there, and then held that the death was not within the exception, because it was not within the interpolation which it had itself made. It decided that the exception of death "resulting from poison, or anything accidentally or otherwise taken, administered, absorbed, or inhaled," meant death "resulting from poison, or anything, accidentally or otherwise, consciously, and by an act of volition, drawn into the system by inspiration." But the parties did not restrict their exception to death from anything taken or inhaled "consciously and by an act of volition," but expressly extended it over death from "anything accidentally or otherwise taken or inhaled." What right had that court to abrogate the contract of the parties, and make a new one for them? That decision never commended itself to my reason, and it does not accord with my view of the law. The fact that the supreme court of Illinois in this Waterman Case, while considering the identical exception before us, and the further fact that some of the courts of New York and Pennsylvania, while considering exceptions in the old form disclosed in the Paul Case, held that death caused by involuntarily and unconsciously inhaling gas was not within the exception, does not persuade me that this court should so hold in the case at bar, because these decisions are not conclusive in this court, because they seem to me to be erroneous, and because there are counter decisions of courts of at least equal authority, notably one made by this court, which appear to me to be in accord with the settled rules of construction and with sound principles of law. McGlother v. Accident Co., 60 U. S. App. 705, 32 C. C. A. 318, and 89 Fed. 685, 688, 689; Cole v. Insurance Co., 61 Law T. (N. S.) 227; Early v. Insurance Co. (Mich.) 71 N. W. 500; Pollock v. Association, 102 Pa. St. 230; Nibl. Ben. Soc. & Acc. Ins. § 393; Cooke, Life Ins. § 56. But I refrain from a more extended discussion of this case, and content myself with a reference to the opinion of this court in McGlother v. Accident Co., supra, where my views, and the reasons for them, appear more at length.