Margreth C. Rasmussen, Appellant, *v.* New York Life Insurance Company, Respondent.

(Argued March 7, 1935; decided April 16, 1935.)

130

*Horace M. Gray* and *Irving L. Evans* for appellant.

*Louis H. Cooke* and *Ferdinand H. Pease* for respondent.

LOUGHRAN, J. A policy of insurance issued by defendant upon the life of plaintiff's husband stipulates for payment to plaintiff of twice its face amount in the event " that the death of the insured resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means." This is an action to recover the double indemnity so to be paid. It is conceded that the insured " died from carbon monoxide poisoning; " that " carbon monoxide is a poisonous gas; " and that, within the foregoing term of the policy, death was the result of accident, without contributory cause.

The policy further provides: " Double indemnity shall not be payable if the insured's death resulted from * * * the taking of poison or inhaling of gas, whether voluntary or otherwise." Unless ineffective for reasons in the record, this exception defeats plaintiff's recovery. (*Osburn* v. *Commercial Travelers Mut. Acc. Assn.*, 265 N. Y. 671.)

At the trial plaintiff offered in evidence a pamphlet which had been inclosed and delivered with the policy. The trial court sustained defendant's objection that the issue was circumscribed within the four corners of the policy, and dismissed the complaint. The question is whether that ruling was right.

The policy is dated March 26, 1928. The pamphlet is entitled, " 1927 in a Nutshell * * * Printed by New York Life Ins. Co. [defendant] N. Y. city." It reads in part: " Double indemnity for accidental deaths. Experience of the New York Life in 1927, the tenth year

of this feature. Double indemnity added $1,983,060.01 to the amounts otherwise payable. Who can say that this feature is not valuable? Causes of death: * * * Carbon Monoxide 16. * * *" Plaintiff testified that, in the course of solicitation of the insurance, defendant's agent suggested double indemnity and left similar pamphlets with her husband.

The document offered by plaintiff is thus probative of the fact that the general words of this policy were used by both insurer and insured to connote accidental death by carbon monoxide as among the contingencies in which double indemnity would be paid. This mutual purpose, we think, is not made irrelevant by the exception for death by poison or gas. Had the excluded evidence been admitted, the jury could have found that the insured was induced to accept the policy by a clear assertion that death by carbon monoxide was not to be understood as death by poison or gas within the exception to the provision for double indemnity in the event of fatal accident. The words of exception are not so explicit that their scientific sense must be held to exclude a definite agreement that a particular situation is outside their operation.

"And even where the writing is not ambiguous on its face, the circumstances under which the parties contract may be looked at * * * to indicate the proper choice of possible meanings; and the common knowledge and the understanding of the parties * * * is sometimes such a circumstance." (American Law Institute, Restatement of Contracts, § 242.) If this policy was accepted on the faith of a not incongruous dictionary of its terms supplied by defendant, there is no reason for denying effect to such substantial evidence of a mutual special sense of the parties. (5 Wigmore on Evidence [2d ed.], §§ 2463, 2465.) (Cf. *Ruse* v. *Mutual Benefit Life Ins. Co.*, 23 N. Y. 516; *Fowler* v. *Metropolitan Life Ins. Co.*, 116 N. Y. 389; *Untermyer* v. *Mutual Life Ins. Co.*, 128 App. Div. 615.)

Defendant contends that its agent was not authorized

to solicit business upon the basis of any pamphlet or to deliver any word-book of the policy. That question also is one of fact. It is undisputed that these circulars were printed by defendant and were made available by it to those employed to sell its contracts.

For these reasons, we are of opinion that the ruling made at the trial was error.

The judgment of the Appellate Division and that of the Trial Term should be reversed and a new trial granted, with costs to abide the event.

CRANE, Ch. J., LEHMAN, O'BRIEN, HUBBS, CROUCH and FINCH, JJ., concur.

Judgments reversed, etc.