**SAFE DEPOSIT & TRUST CO. OF BALTIMORE v. NEW YORK LIFE INS. CO.** \*

No. 5662.

District Court, D. Maryland.
May 4, 1936.

Charles G. Page, of Baltimore, Md., for plaintiff.

John T. Tucker, of Baltimore, Md. (Keech, Carman, Tucker & Anderson, of Baltimore, Md.), for defendant.

CHESNUT, District Judge.

In this case, which has been removed to this court from the Court of Common Pleas of Baltimore City, the jurisdiction here being based on diverse citizenship, the plaintiff is suing to recover the sum of $50,000, being the total amount alleged to be due under the double indemnity feature alone of three separate insurance policies issued on the life of Clifford E. Whitaker, the insured, and payable to the plaintiff as beneficiary therein named. The defendant has demurred to the second, third and fourth counts of the declaration on the ground that it appears therefrom that the circumstances attending the death of the insured, Clifford E. Whitaker, as alleged in the respective counts, brings the case under the provision of one of the excepted risks in the policy as to double indemnity. These counts of the declaration as drawn include also a demand for single indemnity payable in the event of the death of the insured irrespective of accident as the cause of death, which is the condition on which the promise to pay double indemnity is based. But it has been stipulated by counsel in the case that after the suit was brought the defendant paid the single indemnity which was accepted by the plaintiff without prejudice to its right to continue the suit for the balance alleged to be due under the double indemnity clause. It would possibly have been more appropriate if the counts of the declaration had been amended to meet the changed situation, but the defendant in support of the technical correctness of its demurrer contends that notwithstanding the claim in the counts of the declaration for both the single and double indemnity, nevertheless each count is demurrable "because there is an established rule of pleading that if any entire pleading is bad in substance as to part, it is bad for the whole." Poe on Pleading and Practice (in Maryland), Vol. I, § 611. It may be doubted if the rule so stated is technically applicable to the present pleadings, but the plaintiff's counsel acquiesces in the contention, and both counsel agree that the sole question presented by the demurrer is whether the facts and circumstances as set forth in the second, third and fourth counts of the declaration make a case entitling the plaintiff to recover the double indemnity feature of the policies. And the question has been submitted to the court on this basis for determination. Both parties agree that the pleadings appropriately present this single question of law which it is understood will be determinative of the whole case.

Each of the counts demurred to alleges that the double indemnity became payable "if such death of said insured resulted directly and independently of all other causes from bodily injury solely through external violent and accidental means and occurred within ninety days after such injury," and the said policies further provided as follows:

"Double indemnity shall not be payable if the Insured's death resulted from self-destruction, whether sane or insane; *from the taking of poison or of inhaling gas, whether voluntary or otherwise;* from committing an assault or felony; from war or any act incident thereto; from engaging in riot or insurrection; from participation as a passenger or otherwise in aviation or aeronautics; or, directly or indirectly, from infirmity of mind or body, from illness or disease, or from any bacterial infection other than bacterial infection occurring in consequence of accidental and external bodily injury. The Company shall have the right and oppor-

tunity to examine the body and to make an autopsy unless prohibited by law." (Italics supplied.)

Each count further alleges as follows:

"That while said policy was in force and effect as aforesaid, to wit, on the 24th day of January, 1935, said Clifford E. Whitaker, died at the City of Victoria, Province of British Columbia, Canada; that said death resulted directly and independently of all other causes from bodily injury effected solely through external, violent and accidental means within 90 days after such injury, in the following manner, to wit, the said Clifford E. Whitaker died of asphyxiation from gas and fumes escaping from a lighted gas heater while the said deceased was asleep in a hotel room."

It will be noted that one of the excepted risks with respect to the payment of double indemnity in the case of accidental death was "if the insured's death resulted * * * from the taking of poison or of inhaling gas, whether voluntary or otherwise."

It is the defendant's contention that the circumstances of the insured's death as alleged in the declaration brings the case squarely within the language of this excepted risk. The plaintiff's contention is that "the established meaning of the phrase *'to inhale gas'* is limited to the act of breathing in gas; that the phrase *'voluntary or otherwise'* does not extend the meaning of inhalation to include the unconscious reflex of breathing gas while asleep."

In my opinion the plaintiff's contention is not tenable either on authority, or principle and reason. It is true the declaration does not specifically say that the insured's death resulted from "inhaling of gas" but what is alleged is tantamount thereto. The averment is that the insured "died of asphyxiation from gas and fumes escaping from a lighted gas heater while the said deceased was asleep in a hotel room." "Asphyxia" is defined in Webster's New International Dictionary as, "Apparent death, suspended animation, in living organisms, due to deficiency of oxygen and excess of carbon dioxide in the blood, as in interruption of respiration from suffocation or drowning, or from the inhalation of irrespirable gases." It is obviously meant by the declaration that the insured went to sleep in a room in which ordinary illuminating or heating gas (which

it is well known contains carbon dioxide) was escaping from a lighted gas heater, and the gas and fumes were by the insured breathed into his lungs by the ordinary normal process of respiration while he was asleep. It was conceded in argument by plaintiff's counsel that this was the meaning of the declaration. And it is really not disputed by him that the insured's death was due to the physical breathing in or inhalation of the gas; his contention being that the facts as stated did not constitute, in the legal sense only, an *inhalation* by the insured within the meaning of that term as used in its context in the policy. Or, in other words, his contention is that breathing illuminating gas by the insured when asleep did not constitute inhalation thereof within the meaning of the policy, *because it was not a voluntary, conscious and intentional act of the insured.* This legal contention is based principally on the case of Paul v. Travelers' Ins. Co., 112 N.Y. 472, 20 N.E. 347, 348, 3 L.R.A. 443, 8 Am.St.Rep. 758, where the excepted risk in a life policy as to the additional clause for disability because of bodily injury caused by external violent and accidental means, was, phrased as follows:

"By the taking of poison, contact with poisonous substances, or inhaling of gas."

The court there held that the exception as phrased must be construed to mean "a voluntary and intelligent act by the insured, and not an involuntary and unconscious act" and therefore death by asphyxiation from illuminating gas while the insured was asleep was covered by the policy. A similar principle of construction of policies so worded, either with the same or similar language, was followed thereafter in a number of other cases, notably Menneiley v. Employers' Assur. Corporation, 148 N.Y. 596, 43 N.E. 54, 31 L.R.A. 686, 51 Am.St.Rep. 716; Fidelity & Casualty Co. v. Waterman, 161 Ill. 632, 44 N.E. 283, 32 L.R.A. 654; Fidelity & Casualty Co. v. Lowenstein (C. C.A.8) 97 F. 17, 46 L.R.A. 450. It was doubtless in consequence of this line of decisions that the phraseology of the exception in the instant case, and that of similar policies of other companies, was changed and broadened to exclude liability for death caused by "inhaling of gas, *whether voluntary or otherwise.*" Thus it is said in Richards on Insurance (4th Ed.) § 405:

"The words 'inhaling gas' have been construed as applying to an intentional, voluntary or conscious act of the insured. Hence in some policies the exception has been further strengthened by the addition of the words 'voluntary or involuntary.'"

There are apparently only three reported decisions construing and applying policies with excepted risks worded exactly as in the instant case. Each of the decisions is adverse to the plaintiff's contention. In each the death of the insured was due to asphyxiation by carbon monoxide gas from an automobile. In all the cases the deaths were concededly accidental but recovery of the double indemnity feature on the policies was denied. Two of the cases were against this same defendant. They are all quite recent. King v. New York Life Ins. Co., 72 F.(2d) 620, 622 (C.C.A.8); Diamond v. New York Life Ins. Co. (App.Div.) 286 N.Y.S. 625, 626, decided March 27, 1936; Northern Trust Co. v. Central Life Ins. Co., 274 Ill.App. 551 (certiorari denied by Supreme Court of Illinois, October 23, 1934). The opinion in the King Case by Circuit Judge Booth very comprehensively considers the subject matter and reviews the more important prior cases upon the subject. It notes and answers the several contentions advanced in this case by the plaintiff. It was said:

"The contention of appellant is that the insured 'did not inhale said gas within the meaning of said exception, nor was said gas taken voluntarily or in any other intentional manner; but that the evidence showed that the deceased died as a result of breathing carbon monoxide gas unintentionally, and the jury could infer from the facts and circumstances, unconsciously'; and that, therefore, the court erred in holding that the death of the insured came within the exception mentioned in the policy. * * *

"We think there is nothing ambiguous in the language used in the case at bar. The words employed are words in common use and have an ordinary meaning. We think the words, 'the taking of poison or inhaling of gas, whether voluntary or otherwise,' include both intentional and unintentional taking or inhaling. To give the clause the construction claimed by appellant would, in effect, be adding after the word 'otherwise' some such words as 'but nevertheless intention-al.' Such an addition would fall within the ban laid down by the Supreme Court in the Imperial Fire Ins. Company Case, supra [151 U.S. 452, 14 S.Ct. 379, 38 L.Ed. 231], in the following language: 'The courts may not make a contract for the parties. Their function and duty consist simply in enforcing and carrying out the one actually made.' * * *

"But there is no such necessary element of intent in the commonly accepted definition of the word 'inhale,' as is shown by the same lexicographic authorities. The element of intent may or not be present in the act of inhaling. In other words, the act may be voluntary or involuntary, conscious or unconscious. It was, therefore, entirely proper that an explanatory clause should be added. That clause reading, 'whether voluntary or otherwise,' is broad and sweeping. It does not nullify the definition of 'inhaling'; it simply precludes any attempt at restriction. We think the clause is so plain as not to be open to construction."

In the Diamond Case, it was said:

"The sole issue is whether the words 'voluntary or otherwise' exclude from coverage the involuntary inhaling of gas. That question has been finally disposed of by the Court of Appeals in Rasmussen v. New York Life Ins. Co., 267 N.Y. 129, 131, 195 N.E. 821, which involved the identical clause in another policy issued by the same defendant. Plaintiff in that case was granted a new trial, only because of the rejection by the trial court of certain evidence which the Court of Appeals held should have been admitted. The Court of Appeals said: 'It is conceded that the insured died from carbon monoxide poisoning;' that 'carbon monoxide is a poisonous gas;' and that, within the foregoing term of the policy, death was the result of accident, without contributory cause. The policy further provides: 'Double indemnity shall not be payable if the insured's death resulted from * * * the taking of poison or inhaling of gas, whether voluntary or otherwise.' Unless ineffective for reasons in the record, this exception defeats plaintiff's recovery. (Osburn v. Commercial Travelers' Mut. Acc. Ass'n, 265 N.Y. 671, 193 N.E. 438.)"

In the Northern Trust Company Case, the court said:

"The rider says that the double indemnity benefit shall not be payable if

the insured's death resulted from the 'inhaling of gas, whether voluntary or otherwise.' We think this means that if the insured died as a result of inhaling gas, no recovery can be had under the rider. It was intended that there would be no double indemnity if the insured died as a result of inhaling gas, whether inhaled voluntarily or involuntarily. To give to the words the meaning contended for by counsel for plaintiff, the words 'or otherwise' would have to be eliminated, and we think we are not warranted in eliminating those two words, but must construe the contract as made by the parties, giving effect to all of it."

As already mentioned, the plaintiff's argument is based largely on the Paul Case, and its followers. With respect to these it is said, in summarizing the authorities, in Vol. 6, Couch Ency.Ins.Law, § 1248, p. 4563:

"It must be admitted, however, that the weight of authority, numerically at least, supports the contention that accidental and involuntary inhalation of gas does not come within an exemption of liability in case of death from gas, unless the exemption clause expressly provides otherwise."

It is, however, importantly to be noted, in reviewing the authorities, that those courts which have followed the Paul Case (including the New York Court of Appeals which decided it) in applying the older form of the excepted risk to such a factual situation as here presented, have reached a different conclusion in applying the wording of the excepted risk *as it appears in this policy,* or where the language of the exception is similarly broadened. Rasmussen v. New York Life Ins. Co., 267 N.Y. 129, 195 N.E. 821. And in Illinois, the Waterman Case, 161 Ill. 632, 44 N.E. 283, 32 L.R.A. 654, was not

followed in result in the Northern Trust Co. Case decided by the Appellate Court and certiorari was denied by the Supreme Court. Likewise in the Eighth Circuit the earlier case of Fidelity & Casualty Company v. Lowenstein (C.C.A.8) 97 F. 17, where the decision adverse to the insurer was largely based on the special consideration that the form of policy had been construed adversely to the Company in New York and elsewhere (from which opinion Judge Sanborn dissented), was not followed in the later case of Hawkeye Commercial Men's Ass'n v. Christy (C.C.A.) 294 F. 208, 40 A.L.R. 46; and indeed the Lowenstein Case was distinguishable from an earlier case in the same Circuit, McGlother v. Provident Mut. Acc. Co. (C.C.A.) 89 F. 685 (in which Judge Thayer dissented), only on the ground just mentioned. And the King Case, supra, would seem to put an end to what may have previously been divergent views upon similar questions expressed in the opinions in that Circuit. Compare also in Iowa the case of Riley v. Interstate Business Men's Ass'n (1915) 152 N.W. 617; Id. (1916) 177 Iowa, 449, 159 N.W. 203; Id. (1918) 184 Iowa, 1124, 169 N.W. 448, 2 A.L.R. 57, and Jones v. Hawkeye Commercial Men's Ass'n, 184 Iowa, 1299, 168 N.W. 305, 11 A.L.R. 380.[1]

Without undertaking a further review of the numerous authorities, it may be said that no case has been called to my attention in which, under a similarly worded exception from risk, and under similar facts as to the cause of death, the insurer has been held liable.[2]

The plaintiff attempts to distinguish between death from inhaling gas while awake and while asleep. It is said that one is a conscious and intentional act and the other an unconscious and unintentional one. The contention is that while the phrase "voluntary or otherwise" may be

---

[1] While the doctrine of the Paul Case is supported by the weight of authority dealing with policies similarly worded, there is a very respectable minority view even as to such policies. For illustration, see Richardson v. Travelers' Ins. Co. (C.C.) 46 F. 843; McGlother v. Provident Mut. Acc. Co., 89 F. 685 (C.C.A.8); Jones v. Hawkeye Ass'n, 184 Iowa, 1299, 168 N.W. 305, 11 A.L.R. 380; United London and S. Ins. Co., 2 Ch.(1915) 167; 113 L.T.N.S. 397; and see the cases collected in 11 A.L.R. 389, and 40 A.L.R. 52.

[2] Plaintiff's counsel cites as analogous Penfold v. Universal Life Ins. Co., 85 N. Y. 317, 39 Am.Rep. 660, where the excepted risk was if the insured should die by his own hand or act, "voluntary or otherwise," and the cause of death, taking poison by mistake, was held not within the exception. The clause was treated as one against *suicide,* which obviously properly includes only *intentional* self-destruction. See, also, Edwards v. Travelers' Life Ins. Co. (C.C.) 20 F. 661, 662. This analogy was considered and rejected both in the King Case and the Diamond Case, supra.

sufficiently broad to include an involuntary action, as in breathing in or inhaling carbon monoxide gas in a garage while working on an automobile, nevertheless it is not broad enough to include an unconscious inhalation by the insured while asleep. Or, in other words, it is contended that the inhalation in this case must have been intentional on the part of the insured. A similar contention was, however, expressly rejected in the King Case. The argument is based on an entirely too narrow and limited construction of the word "otherwise." "Involuntary" is, of course, the very antithesis of "voluntary," and is admittedly included in the phrase "or otherwise"; but "otherwise" is broader than a mere antithesis. Its dictionary meaning (Webster's New International Dictionary) is "in a different manner; in another way, or in other ways." Clearly the word is not limited to a particular manner in direct contrast to the word "involuntary." As used, it is quite broad enough to carry the meaning of "in any other manner," and to include the inhalation of gas whether breathed consciously or unconsciously, voluntarily or involuntarily, intentionally or unintentionally. Hawkeye Commercial Men's Ass'n v. Christy, 294 F. 208, 213, 214, 40 A.L.R. 46 (C.C.A.8). Comparing Rasmussen v. New York Life Ins. Co., 267 N.Y. 129, 131, 195 N.E. 821, with Osburn v. Commercial Travelers' Acc. Ass'n, 265 N.Y. 671, 193 N.E. 438, it is evident that the New York Court of Appeals considered the phrase "voluntary or otherwise" as equivalent to "voluntarily, involuntarily, consciously or accidentally."

However, so far as this case is concerned, the word "otherwise" is sufficiently broad to meet the situation if it is understood to include the *involuntary* inhalation of gas, because the word "involuntary" aptly describes the physical act of breathing illuminating gas while asleep. In a number of the decided cases where death resulted from inhaling illuminating gas while asleep, this is described as an involuntary action. Jones v. Hawkeye Ass'n, 184 Iowa, 1299, 168 N.W. 305, 11 A.L.R. 380; Porter v. Preferred Acc. Ins. Co., 109 App.Div. 103, 95 N.Y.S. 682; Id., 186 N.Y. 599, 79 N.E. 1114; King v. New York Life Ins. Co. (C.C.A.) 72 F.(2d) 620. In Minner v. Great Western Acc. Ass'n, 99 Kan. 575, 162 P. 1160, L.R.A.1917D, 738, the court said:

"There can be no doubt that the words 'in any manner taken * * * voluntarily or involuntarily,' cover the accidental breathing of gas while asleep."

■ The case for the defendant is equally strong on principle and reason. The point of approach to a construction of insurance policies, according to the rule of the federal courts, is thoroughly well settled. Words are to be construed, in the absence of ambiguity, in their plain ordinary and popular sense; if of doubtful meaning, the construction most favorable to the insured will be adopted; but subtle and unusual meanings will not be attributed to the words used merely to create an ambiguity for the purpose of solving it in favor of the insured. Imperial Fire Ins. Co. v. Coos County, 151 U.S. 452, 462, 14 S.Ct. 379, 38 L.Ed. 231; Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed. 416; Landress v. Phœnix Life Ins. Co., 291 U.S. 491, 54 S.Ct. 461, 78 L.Ed. 934, 90 A.L.R. 1382; Mutual Life Ins. Co. v. Hurni Packing Co., 263 U.S. 167, 174, 44 S.Ct. 90, 68 L.Ed. 235, 31 A.L.R. 102; Stipcich v. Metropolitan Life Ins. Co., 277 U.S. 311, 322, 48 S.Ct. 512, 72 L.Ed. 895.

The defendant's contention in this case is entirely consistent with these principles of construction. But the plaintiff's contention seems to me to run counter to them. The latter, in its final analysis, depends upon an unusual and unduly contracted meaning attributed to the word "inhale," in that it limits the meaning of the phrase "inhale * * * voluntary or otherwise" to the condition of being awake, and excludes the applicability of the phrase to the condition of sleep. Of course persons do inhale air asleep as well as awake; otherwise death must inevitably ensue. Even if it be granted that the word "inhale" is more frequently and commonly understood as implying a conscious and intentional act of the will (as in inhaling tobacco smoke), nevertheless we may not, without doing violence to the proper principles of construction of insurance policies, disregard the amplifying effect of the added words, "voluntary or otherwise." To do so would be in effect (as Judge Morris said in this court many years ago, in an oral opinion in a somewhat similar situation), to "fritter away" the plain words of the contract. Clarke v. Equitable Life Assur. Soc., 118 F. 374, 378 (C.C.A.4).

The demurrers to the second, third and fourth counts of the declaration are sustained, without leave to amend, as I understand counsel for the plaintiff does not desire permission for amendment.