S. ROBERT LEVINSON *v.* THE RELIANCE INSURANCE COMPANY OF PITTSBURGH, PA.

[No. 20, January Term, 1945.]

454

*Decided March 2, 1945.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, MELVIN, HENDERSON, and MARKELL, JJ.

*William Saxon* for the appellant.

*William N. McFaul,* with whom were *Dorton & McFaul* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of the Superior Court of Baltimore City in favor of the appellee, entered on motion of the appellee for failure of the appellant to amend his declaration after the court had sustained a demurrer to the declaration as particularized. The appeal thus raises the question as to the correctness of the court's ruling upon the demurrer.

Under date of June 4, 1935, the appellee issued a policy for the sum of $1,000 on the life of the plaintiff's (appellant's) intestate. Attached to and made a part of the policy was a Supplemental Agreement described as an "Additional Accidental Death Benefit (Double Indemnity Benefit)," providing for the payment of the additional sum of $1,000 if the insured's death "resulted, directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means and that such death was evidenced by a visible wound or contusion on the exterior of the body (except in case of accidental drowning or of internal injury revealed by an autopsy)." The agreement further provided: "This benefit will not be payable if the death of the insured shall result directly or indirectly * * * from taking of poison or inhaling of gas, whether accidental or otherwise * * *."

After reciting these provisions, the declaration alleged that the insured died on November 9, 1943, "as a result of bodily injuries effected solely through external, violent and accidental means," but upon demand for particulars, this allegation was amplified by the additional allegations that: "The cause of death was asphyxiation" and "the said insured was discovered asphyxiated by illuminating gas, on the morning of November 9, 1943." A demurrer to the declaration, as particularized, assigned as grounds that the allegations brought the case under the provisions of the excepted risk of death from the inhaling of gas, whether accidental or otherwise. The court below agreed with this contention.

The allegations of the declaration were sufficient to state a cause of action under the supplemental agree-

ment, disregarding the excepting clause. Whether the death did in fact result "directly and independently of all other causes, from bodily injuries effected solely through external, violent and accidental means," as alleged, and was "evidenced by a visible wound or contusion on the exterior of the body," would be matters of proof. Compare *John Hancock Mutual Life Ins. Co. v. Plummer,* 181 Md. 140, 28 A. 2d 856. The sole question before us is the construction of the excepting clause, and we have not been referred to, nor have we found, any Maryland authority directly in point. We are referred to the case of *United Life & Accident Ins. Co. v. Prostic,* 169 Md. 535, 182 A. 421, in which this Court construed an exception as to "homicide," to include death from a beating by robbers, even though it was not shown that the robbers had an actual intent to kill, but the analogy seems rather remote.

The first point urged by the appellant is that the allegation of death from asphyxiation by illuminating gas does not necessarily mean that gas was inhaled. Asphyxia is defined in Webster's New International Dictionary as "Apparent death, suspended animation, in living organisms, due to deficiency of oxygen and excess of carbon dioxide in the blood, as in interruption of respiration from suffocation or drowning, or from the inhalation of irrespirable gases." Asphyxia carbonica is defined in Dorland's Medical Dictionary (20th Ed. 1944) as "Suffocation from the inhalation of coal gas, water gas, or carbon monoxide."

Appellant relies upon the case of *Spence v. New York Life Ins. Co.,* 1941, 154 Kan. 379, 118 P. 2d 514. In that case the plaintiff alleged that the insured died from suffocation; the defendant answered that he died from inhaling non-poisonous carbon dioxide gas at the bottom of a well. It was not denied that the insured inhaled the gas, but there was medical testimony to the effect that death was due to suffocation from a want of oxygen. The trial court left it to the jury to determine whether death was caused by suffocation or by the inhaling of gas, and

this was affirmed on appeal (three judges dissenting).

In the case of *Stone v. Physicians Casualty Ass'n*, 1936, 130 Neb. 769, 266 N. W. 605, 608, the court said: "We have come to the conclusion * * * that a person suffers death as a result of suffocation by gas whether death was due to a deficiency of oxygen in the blood or to an interruption of the physical act of breathing that would prevent the inhalation of sufficient oxygen into the lungs. In the ordinary and popular sense, either results in death by suffocation by gas."

In the case at bar, the allegation of death from asphyxiation by illuminating gas is tantamount to an allegation that the gas was breathed. *Safe Deposit & Trust Co. v. New York Life Insurance Co.*, 1936, 14 F. Supp. 721, affirmed, 4 Cir., 84 F. 2d 1011. We are not impressed by the reasoning of the Kansas Court that would distinguish between a death caused directly by the gas and one caused indirectly by the exclusion of oxygen due to the presence of gas in the lungs. In either event, the inhalation of gas would seem to be the proximate cause of death. In the case at bar, the excepting clause covers every case where death results "directly or indirectly" from inhaling of gas. This language was not in the policy in the Kansas case, and that in itself would furnish a sufficient ground of distinction. Another possible distinction may be that illuminating gas is poisonous as well as suffocating.

The second point raised by the appellant presents more difficulty. The appellant contends that the allegation that the insured was discovered asphyxiated by illuminating gas, on the morning of November 9, 1943, imports that he died in his sleep, or at least that this is a permissible inference on demurrer. His contention is that breathing illuminating gas by the insured while asleep did not constitute "inhaling" gas within the meaning of the policy, because it was not a voluntary, conscious or intentional act of the insured. The argument relies chiefly upon the context, for the phrase is "taking of poison or inhaling of gas." "Taking" implies a deliberate

act, and it is urged that "inhaling" likewise implies an act of volition.

The point is a narrow one, but there are a number of decisions dealing with the subject. It is necessary to examine the authorities minutely, for they turn upon the phraseology of each particular policy.

In *Paul v. Travelers' Ins. Co.*, 1889, 112 N. Y. 470, 472, 20 N. E. 347, 348, the excepted risk was phrased: "by the taking of poison, contact with poisonous substances, or inhaling of gas," and the court said: "the company can only be understood to mean a voluntary and intelligent act by the insured and not an involuntary and unconscious act." It was held that the exception did not cover death by asphyxiation from illuminating gas during sleep. The court suggested that the case would have been covered by an exception of "death caused wholly or in part by gas." The Paul case was followed by *Menneiley v. Employers' Liability Assurance Corporation*, 1896, 148 N. Y. 596, 43 N. E. 54, 55, where the exception was "anything accidentally taken, administered, or inhaled * * * inhaling gas" and it was again argued that the insured, who died from asphyxia in a hotel room, was within the exception.

In denying this contention the court said: "Coupled together as these provisions are, the same rule of construction must be applied to that portion which relates to something accidentally inhaled as applies to the portion which relates to a substance accidentally taken or accidentally administered."

The Paul case was followed in *Pickett v. Pacific Mut. Life Ins. Co.*, 1891, 144 Pa. 79, 22 A. 871, where it was held that inhalation of gas did not include involuntary inhaling of carbon dioxide gas in a well where its presence was not suspected.

The Paul case was also followed in *Fidelity & Casualty Co. v. Waterman*, 1896, 161 Ill. 632, 44 N. E. 283, where the phrase was "injuries * * * resulting from poison or anything accidentally or otherwise taken, administered, absorbed or inhaled." The court stressed the fact that

the company was a New York corporation and must have issued the policy with knowledge of the New York decision in the Paul case. The court also pointed out that the words "accidentally or otherwise" did not expand the word "inhaled" so as to overcome the limitation to a voluntary act found by the courts in the earlier decisions.

In *Fidelity & Casualty Co. v. Lowenstein*, 1899, 8 Cir., 97 F. 17, it was held (Sanborn, J., dissenting) that the phrase "injuries * * * resulting from poison or anything accidentally or otherwise taken, administered, absorbed, or inhaled," did not cover death from inhaling illuminating gas while asleep. The court stressed the fact that the company had issued the policy with full knowledge of the construction put upon the language by several courts of last resort.

In *Hawkeye Commercial Men's Ass'n v. Christy*, 1923, 8 Cir., 294 F. 208, 209, Judge Sanborn again strongly disapproved the Paul case and its progeny, and in this case his view prevailed. The phrase was death "resulting wholly or in part from * * * gases or anything accidentally, or otherwise, taken * * * or inhaled," and the first seven words would seem to prevent recovery, even under the doctrine of the Paul case. Nevertheless, the court overruled the Lowenstein case and reinstated the earlier decision by Sanborn, J., in *McGlother v. Provident Mutual Accident Co.*, 89 F. 685. Compare *Richardson v. Travelers Ins. Co.*, 46 F. 843. These decisions are no longer controlling even in the Federal Courts, under the rule of *Erie R. R. Co. v. Tompkins*, 304 U. S. 64, 82 L. Ed. 1188.

In *Jones v. Hawkeye Commercial Men's Ass'n*, 1918, 184 Iowa 1299, 168 N. W. 305, (2 judges dissenting), this same phrase had been held to include an involuntary act. The court, however, disapproved the Paul case, as inconsistent with the plain meaning of the words.

In accord with these decisions, disapproving the doctrine of the Paul case, is *In re United London & S. Ins. Co.*, 2 Ch. [1915] 167, 113 L. T. N. S. 397, where the phrase was "anything inhaled."

In 6 *Couch, Cyc. of Ins. Law,* 1929 Ed., Sec. 1248, p. 4563, it is said: "It must be admitted, however, that the weight of authority, numerically at least, supports the view that accidental and involuntary inhalation of gas does not come within an exemption from liability in case of death from gas, unless the exemption clause expressly provides otherwise."

The exception suggested by the court itself in the Paul case, i. e., "death caused wholly or in part by gas," has been held to include breathing gas during sleep in *Ferris v. Southern Surety Co.,* 1925, 157 La. 908, 103 So. 259; and *Estabrook v. Eastern Commercial Travelers Accident Ass'n,* 1941, 308 Mass. 439, 32 N. E. 2d 250, as well as in *Jones v. Hawkeye,* supra, and *Hawkeye v. Christy, supra.* Contra, as to the phrase "by gas," is *Travelers Ins. Co. v. Ayers,* 1905, 217 Ill. 390, 75 N. E. 506.

The insurance companies have found no difficulty in overcoming the restricted meaning of the word "inhaling," adopted in the Paul case, by the simple expedient of using the words "voluntarily or involuntarily," or "voluntarily or otherwise."

It is said in Richards, on Insurance (4th Ed.), Sec. 405: "The words 'inhaling gas' have been construed as applying to an intentional, voluntary or conscious act of the insured. Hence in some policies the exception has been further strengthened by the addition of the words 'voluntarily or involuntarily.' " The Courts have almost uniformly given effect to such words. *Safe Deposit & Trust Co. v. New York Life Insurance Co.,* supra; *King v. New York Life Insurance Co.,* 8 Cir., 1934, 72 F. 2d 620; *Feldstein v. New York Life Insurance Co.,* 1941, 260 App. Div. 476, 23 N. Y. S. 2d 108, affirmed 286 N. Y. 572, 35 N. E. 2d 924; *Rasmussen v. New York Life Ins. Co.,* 1935, 267 N. Y. 129, 195 N. E. 821; *Porter v. Preferred Accident Insurance Co.,* 1906, 109 App. Div. 103, 95 N. Y. S. 682, affirmed 186 N. Y. 599, 79 N. E. 1114; *Birss v. United Commercial Travelers of America,* 1922, 109 Neb. 226, 190 N. W. 486; *Minner v. Great Western*

*Accident Association*, 1917, 99 Kan. 575, 162 P. 1160; *Vaughan v. Gulf Life Insurance Co.*, 1941, 64 Ga. App. 590, 13 S. E. 2d 715; *Osburn v. Commercial Travelers' Mutual Accident Ass'n*, 1934, 265 N. Y. 671, 193 N. E. 438; *Diamond v. New York Life Insurance Co.*, 1936, 247 App. Div. 203, 286 N. Y. S. 625; *Northern Trust Co. v. Central Life Insurance Co.*, 274 Ill. App. 551 (certiorari) denied by Superior Court of Illinois. Contra, *Spence v. New York Life Ins. Co.*, supra.

But although courts give effect to the phrase "voluntarily or otherwise," as taking the policy out of the rule laid down in the Paul case, they do not give the same effect to the phrase "accidental or otherwise." This phrase merely extends the meaning of "inhaling" to cover accidental death, whether caused by the mistake of the assured or the neglect of some other person. It does not negative the element of volition in the word "inhaling," upon which the cases turn.

The applicable canon of construction is to give to the language employed, when unambiguous, its ordinary and usually accepted meaning. *United Life & Accident Insurance Co. v. Proslic*, supra. In case of ambiguity, a policy should be construed in favor of the assured, although this does not permit a strained construction. *Mutual Life Ins. Co. v. Plummer*, supra. To this may be added the statement of this Court in *Hospital for Women of Maryland for Use of Robert S. Green, Inc. v. United States Fidelity & Guaranty Co.*, 177 Md. 615, 620, 11 A. 2d. 457, 459, quoting O'Dunne, J.; "These bonds are presumably drawn by the best legal talent, and on their faces, like insurance policies, they seem to cover a wide field, but when it comes to relying upon them it is generally found that the language used is selected with great care, and with special reference to adjudications of courts of last resort, and the liability under them is oftentimes found to be of a definitely restricted variety."

The policy now in suit was issued by the defendant, a Pennsylvania corporation, in 1935. In the face of decisions in New York, Pennsylvania, Illinois and other

States, we cannot say that the language used is so plain as to be wholly unambiguous. If the company had desired to restrict its liability in the light of the authorities it would have been easy to do so. The premium is necessarily based upon the actuarial calculation of risk, dependent upon the extent of coverage, and it is well known that the premium rates are uniform, and do not vary from state to state. A uniform interpretation is particularly desirable in this field.

We conclude that the exception in the case at bar does not bar recovery, under the facts alleged in the declaration and admitted by the demurrer, and that the judgment should be reversed and the case remanded for further proceedings.

*Judgment reversed and case remanded, with costs to the appellant.*